## JOLLEY vs. WALKER'S ADM'RS.

1. Plaintiff having agreed with S. & P., who were mail contractors, to keep
their drivers and horses at a stipulated sum per annum, payable quarterly,
and during the last quarter, on their becoming insolvent, having refused to
keep their drivers and horses without security, thereupon defendant, at the
request of S. & P., wrote to plaintiff, saying "I will see you paid for this
quarter, as their time then expires, payable when due in Alabama bank-notes";
plaintiff kept the drivers and horses until the expiration of the quarter, and
the agent of S. & P. afterwards closed their account by giving the note of
the surviving partner, payable one day after date, which was filed as a claim
against the estate of the deceased partner : *Held*, that defendant's promise
was an original undertaking, upon a new and sufficient consideration, which,
upon its acceptance by plaintiff, discharged the debt of S. & P., and bound
defendant to pay, at the expiration of the quarter, in Alabama bank-notes.

ERROR from the Circuit Court of Madison.

Tried before the Hon. THOMAS A. WALKER.

ASSUMPSIT by the administrators of Jeremiah W. Walker,
deceased, against Benjamin Jolley, on the following cause of
action, as endorsed on the writ : "That in and before the
year 1842, Messrs. Stokes & Purdom were contractors of a
mail stage line, upon which the said Jeremiah W. Walker in

his lifetime lived ; the defendant, on the 16th day of April, 1842, by his written instrument of that date, promised the said Walker, who was then living, that he would see the said Walker paid for keeping the horses and drivers of said Stokes & Purdom for that quarter ; the said Walker accordingly kept said horses and driver for and during that quarter, the reasonable value of which was $500, which sum has never been paid, either by said defendant, or by said Stokes & Purdom." The defendant pleaded, *non assumpsit*, no consideration, failure of consideration, set-off, and accord and satisfaction.

On the trial, the plaintiffs first read in evidence to the jury a letter, of which the following is a copy :—

"Huntsville, 16th April, 1842.

"Mr. J. W. Walker : Sir—Mr. Purdom spoke to me some few days ago to write to you that I would see you paid for keeping Stokes & Purdom's horses and drivers for this quarter ; and I met with a misfortune to get badly hurt, and have not been able to do anything before now. I will see you paid for this quarter, as their time then expires ; payable, when due, in Alabama bank-notes.

"Yours, Benj. Jolley."

The plaintiffs then read the deposition of Jeremiah S. Calvert, who testified, in substance, to these facts : That in 1842 he was acting as agent for Stokes & Purdom on their stage line between Courtland and Tuskaloosa, in procuring suitable stands and provisions for their horses and drivers ; that as such agent, he made a contract for them with said J. W. Walker, whereby said Walker agreed to furnish such things as were necessary for their horses and driver, and he agreed to pay said Walker $900 *per annum* for so doing ; that said Walker became uneasy about the last quarter, and required security, whereupon Benjamin Jolley wrote to him, telling him that he would see it paid on the 30th June, 1842, at which time the last quarter ended ; that on the 13th July, 1842, witness, in passing Walker's house, called on him, and closed the accounts between him and said Stokes & Purdom, by giving their note for the amount due, payable one day after date ; that he has since seen this note on file as a claim against the estate of said Stokes.

The plaintiffs further read in evidence the following writ-

ten admissions: "It is admitted, that said note was executed in Walker county àt the distance of about one hundred miles from Huntsville, the residence òf said Purdom; that said Calvert would swear, if here, that it was written by him, that no extension of the time of payment was asked, that he gave the note merely to close the account,' and that it was always his custom, in settling accounts, to give notes in that form; that the firm of Stokes & Purdom was composed of Henry Stokes and Richard B. Purdom; that Stokes died in February, 1842, insolvent, at which time Purdom was also insolvent; and that Calvert, as the agent of Stokes & Purdom, was in the habit of giving notes for them on the line."

The plaintiffs then read the deposition of said Richard B. Purdom, who testified, that "the guaranty on which this suit is brought, was given to secure said Walker for keeping said Stokes & Purdom's stage horses and drivers, from the date of the guaranty up to the 1st July, 1842; that at the time it was given, the estate of said Stokes was thought to be unable to pay its debts, but witness thought that he had enough to pay the debts of the firm, but soon afterwards found out that he was mistaken; that said guaranty was given, because said Walker would not agree to keep the said horses and driver, unless witness would get some person to agree to see him paid; that he does not recollect of any particular inducements which caused Jolley to give the guaranty"; that the contract with Walker was made by Calvert, as the agent of Stokes & Purdom, and witness understood from him "that it was at the rate of $900, payable quarterly;" that the last quarter, mentioned in Jolley's letter, expired on the 1st July, 1842, and Walker continued to keep the horses and driver until that time.

The defendant then read to the jury the note spoken of by the witnesses, which was signed, "Richard B. Purdom, surv. part. of Stokes & Purdom, by J. S. Calvert, agent," and was in these words:

"One day after date I promise to pay Jeremiah W. Walker the sum of two hundred and eighty-seven dollars and one cent for feeding teams and drivers on Courtland line for the quarter ending 30th day of June, 1842, this 13th day of July, 1842."

"This was all the proof offered in the cause; and the defendant then asked the court to charge the jury,—

"1. That the defendant's promise, as shown by said letter, was an undertaking to pay the debt of another ; which charge the court refused to give, and the defendant excepted.

"2. That the contract between Walker and Stokes & Purdom, as shown by Calvert's deposition, was an entire contract, and being entire, that Walker was bound to perform his part of it, whether Stokes & Purdom ever paid him or not. This charge the court gave, but said to the jury, that if they believed from the evidence that the compensation was to be paid quarterly, and that Walker had refused, without security, to keep the horses for the quarter immediately succeeding the guaranty, then the defendant was liable on his guaranty" ; and to this qualification of the charge the defendant excepted.

"3. That if they believed from the proof that there was no other consideration for defendant's said promise than the said contract between Walker and Stokes & Purdom, said contract was not such a consideration as would bind defendant to pay the debt to Walker ; which charge, also, the court refused to give, and the defendant excepted.

"4. That if they believed that Walker, after the expiration of the contract between him and Stokes & Purdom, took said Purdom's note, as shown in Calvert's deposition, this discharged defendant ; which charge, also, the court refused to give, and defendant excepted.

"5. That if defendant's promise was a guaranty, then plaintiffs must show that Walker notified Jolley that he accepted it ; which charge, also, the court refused to give, and the defendant excepted.

"6. That the taking of Purdom's note by Walker, as shown by the proof, was an extension of the time of payment of the debt of Stokes & Purdom, and discharged defendant ; which charge, also, the court refused to give, and the defendant excepted.

"The court charged the jury, that, to make a good consideration, a benefit need not accrue to the defendant—that it is sufficient, if a benefit accrued to Stokes & Purdom, at the defendant's instance ; to which charge, also, the defendant excepted."

The charges given, and the several refusals to charge as requested, are now assigned for error.

ROBINSON & JONES, for the plaintiff in error :

I. The first charge should have been given—

1. Jolley's promise was, to pay or answer for the pre-existing debt or liability of Stokes & Purdom to Walker. This is established by the terms of Jolley's letter, the testimony of Calvert and Purdom, and by the conduct of the parties at and after the transaction. If we could so far distort the bill of exceptions, as to conclude that the promise of Jolley was coeval with the contract of Stokes & Purdom, it would still be a collateral promise, because the bill of exceptions shows that it was made in aid of one by Stokes & Purdom, and that the latter were regarded and treated as the primary debtors ; and the rule of law, in such case, is, that if Stokes & Purdom were regarded as debtors at all, and were at all looked to by Walker for payment, then any promise of Jolley's, on the same consideration, though made at the same time as their contract, would be collateral.—3 Stew. & Port. R. 213 ; McKenzie v. Jackson, 4 Ala. 230 ; Leonard v. Vredenburg, 8 John. R. 29. The language of the letter, "I will see you paid," indicates a collateral promise.—Cahill v. Bigelow, 18 Pick. 369 ; Nelson v. Boynton, 3 Metc. 396 ; Newell v. Ingraham, 15 Verm. 422.

2. All the evidence in the cause, or nearly all, was offered by the plaintiff below, and is embodied in the bill of exceptions. In reference to this point, there is no conflict in it. The defendant, therefore, clearly had the right to have the legal effect of his letter in reference to the other testimony in the cause expounded to the jury.—Earbee v. Craig, 1 Ala. 607 ; Long v. Rogers, 17 Ala. 540. And when the court refuses to construe written testimony, when it should, and improperly leaves the question to the jury, injury will be presumed, and the cause reversed, whether the injury be evident or not.— Long v. Rogers, 17 Ala. 540 ; Ex'rs of Robertson v. Allen, 16 Ala. 106. In this case several important grounds of defence depended on whether Jolley's promise was collateral or primary, and upon this point the jury might very readily go astray : for, if the jury erroneously concluded that the promise was primary, there was an end of this branch of the case ; while, if his promise was collateral, then other considerations had to be determined before a verdict could be agreed upon—

such as, whether the contract and promise were cotemporaneous, the consideration of the contract, &c. &c.

II. The qualification to the second charge cannot be sustained. It assumes that Walker had a right to annul his *entire* contract at pleasure, and that an additional promise, in aid of the original, made in order to prevent a breach of it, would be obligatory. The question as to the effect of a *new* contract, made after the old one had been forfeited and abandoned, is not presented. One witness says, Walker was to keep the teams and drivers for one year, ending on the 30th of June, for $900, and "that said Walker became uneasy about the last quarter of said contract, and required security," &c. The other witness says, he first made the contract, and he understood from him that Walker should keep the teams for one year ending at the same time, for $900, payable quarterly; and that "Walker would not agree to keep said horses and drivers, unless he, the witness, got some one to see him paid." But it does appear that Walker had performed his contract for three quarters, and half a month of the last quarter, and was still keeping teams and drivers when the letter was written. A promise to pay or guaranty the debt or liability of another previously existing, must not only be in writing under the statute of frauds, but, to be binding, must be upon some new consideration.—Theobald on Prin. and Sur., 5, § 10 ; Chitty on Cont. 51a, 52 ; Bealle & Co. v. Ridgway, 18 Ala. 118. And the law is the same, if the person to whom the collateral promise is made has actually given the credit by agreement, and partly, though not entirely, executed what by the contract devolved on him.—Theo. Prin. and Sur. 5, § 10 ; Jackson v. McKenzie, 7 Ala. 791 ; Newell v. Ingraham, 422 ; Tileston v. Nettleton, 6 Pick. 509 ; Larson & Sanders v. Wyman, 14 Wend. 247. This charge is, therefore, erroneous as a legal proposition, and being affirmative, injury is presumed.—Moore v. The State, 18 Ala. 532. It is equally erroneous when applied to the facts of this case ; and it may be considered in reference to the facts of the case.—Waters v. Spencer, 22 Ala. 466. The proof also showed that there was no quarter immediately succeeding the guaranty, but that at least one-sixth of the last quarter had then passed. This charge was, then, according to the court's own principles, erroneous,

if intended to relate to the whole current quarter ; and if intended to apply alone to the unexpired portion of the quarter, was eminently calculated to mislead the jury.—Waters v. Spencer, 22 Ala. 466.

III. From what has just been said, and the authorities just cited, the court erred in refusing the third charge. It is conceded that the contract between Stokes & Purdom and Walker would have been a sufficient consideration for Jolley's promise or guaranty, if the promise or guaranty had been made cotemporaneously with that contract ; but the bill of exceptions shows that that was not the fact.

IV. The fourth charge ought to have been given, and also the sixth—1. The taking of a promissory note for a pre-existing debt, is a conditional payment at the least, and suspends the right of action until the maturity of the note.—Story on Contracts, 812, § 979. Walker's right of action, then, was suspended for the period of two days, the day on which the note was given, and the day on which it was due.—Randolph v. Cook & Ellis, 2 Port. 286 ; Sanders & Harrison v. Ochiltree, 5 Port. 73. The surety has the right to stand on the precise terms of his contract, and is discharged if those terms be altered without his consent, whether the alteration consists in the amount of the obligation, or the time or manner of performing it ; and this, whether he is injured by the change or not.—Comegys & Pershouse v. Booth & Bell, 3 Stew. R. 14; McKay & McDonald v. Dodge & McKay, 5 Ala. 388 ; Hayden v. Brown, 18 Ala. 643.

V. In the qualification of the second charge, the judge characterized the promise of Jolley as a guaranty, and gave effect to it as such. It was also so characterized by the plaintiff below in his interrogatories, and by witness Purdom in his answers. Hence the defendant very properly and pertinently asked the fifth charge—that if it was a guaranty, then Walker ought to have notified Jolley of its acceptance. The court having refused to determine whether Jolley's promise was to pay the debt of another or not, this was the most favorable form, for the other side, in which the charge could have been asked. The contract of guaranty, like all other contracts, requires both a proposal and acceptance.—Story on Contracts, 727, § 853 ; Martin v. Black's Executors, 21 Ala. 728. Nor

will a guaranty be binding on the guarantor unless he is noti-
fied by the guarantee that the offer is accepted.—Lawson
v. Towns, Oliver & Co., 2 Ala. 375 ; 2 Stark. Ev. 648 ;
Douglass v. Reynolds, 7 Peters 114 ; same case, 12 Peters
504 ; Lee v. Dick, 10 Peters 483 ; Chitty on Contracts, 11.
But this principle is not confined to letters containing guar-
anties. Any proposition by letter is not obligatory until ac-
cepted, and the writer is notified of its acceptance.—Martin
v. Black's Ex'rs, 21 Ala. 728. The defendant, then, might
have asked the charge without restricting it to propositions
to guaranty ; but the restriction could not affect his right to
the charge. The greater embraces the less, and as it would
be true of propositions by letter generally, it must be true of
propositions to guaranty, which are but one species.

VI. The seventh charge is equally erroneous.—The charge
must be construed with reference to the evidence in the cause.
Waters v. Spencer, 22 Ala. 466. Now the effect of this
charge is, either that as a question of fact Jolley's promise
was cotemporaneous with the contract of Stokes & Purdom,
or that the original contract of these parties was a sufficient
consideration for the subsequent collateral promise. In the
first aspect, it was erroneous, 1st, because untrue in point of
fact, and, 2d, because it was an invasion of the province of the
jury. In the second aspect, it is erroneous, because, as we
have seen, the consideration moving between the original
parties, is only a sufficient consideration for the collateral
promise, when the contract and promise are cotemporaneous.
Theo. on Prin. and Sur. 5, § 10 ; Chitty on Cont. 51a, 52 ;
Bealle & Co. v. Ridgway, 18 Ala. 118 ; Martin v. Black's
Executors, 21 Ala. 728.

L. P. WALKER and ROBT. C. BRICKELL, contra :

1. Jolley's promise is not "an undertaking to pay the debt
of another." It is a direct, unconditional promise to pay
money at a certain time. That a third person may be liable
to the same extent, upon the same consideration, and receives
the benefit, does not make the contract "an undertaking to
pay the debt of another." Any number of persons may be
bound by a joint, or a joint and several promise, though the
consideration moves to one only. The obligation of such a

contract is common to all, and being so, though the parties may between themselves sustain the relation of principal and surety, it cannot be termed "an undertaking" by any one to pay the debt of another. The promise is, not to be answerable if the principal makes default, but that each and all the principals will perform.—De Wolf v. Rabaud, 1 Peters 500; Townsley v. Sumrall, 2 ib. 181; Wainwright v. Straw, 15 Verm. 215.

2. The promise was upon a sufficient consideration and valid. Martin v. Black, 21 Ala. 721. The promise being reduced to writing, it is not necessary that the consideration should be a benefit to the promisor.—Ib. Being reduced to writing, it is valid, if founded on a legal consideration, whether such consideration be a benefit to the promisor, or an injury to the promisee.—Ib. It is only where the promise is not reduced to writing, that the consideration must be a benefit to the promisor.—Ib. An assent by one of the parties to a contract, to go on and perform it, on the faith of a promise of payment, given by a third person, is a sufficient consideration to support the promise.—Fox v. Barber, 2 E. C. L. 386; Edge v. Frost, 16 ib. 199; Sinclair v. Richardson, 12 Verm. 33; King v. Despard, 5 Wend. 277.

3. One cause of action cannot be extinguished by the substitution of another of the same degree, unless it is done by way of accord and satisfaction, which requires a distinct and executed agreement between the parties, and cannot be implied by the law, in the absence of such agreement.—2 Amer. L. C. 179. Walker's acceptance of the note made by Calvert as agent of Stokes & Purdom, implied no agreement to postpone his remedy upon Stokes & Purdom's indebtedness to him. It operates only as a new and collateral security for the same debt.—Elwood v. Deifendorf, 5 Barb. 408; U. States v. Hodge, 6 How. 282. A bill or note, given for a precedent debt, is not a payment, unless expressly agreed to be so.—Trotter v. Crockett, 1 S. & P. 446 ; S. C., 2 Por. 401 ; Abercrombie v. Moseley, 9 ib. 150 ; Tobey v. Barber, 5 Johns. 68.

A promissory note given to a creditor, if it is not intended by the parties as a payment, shall not operate as such.—Maneely v. McGee, 6 Mass. 143; Emerson v. Prov. Hat Man. C., 12 ib. 237; Vancleef v. Therrasson, 3 Pick. 12, cited and approved in 10 Ala. 756, (766). See Calvert's deposition, where

he says this note was given merely to close the account. It is clear that giving a note which proves to be an insufficient security, does not discharge the original debt.—10 Ala. 767, and cases cited. (The proof shows that Stokes & Purdom were insolvent when the note was given). The taking of the note of Stokes & Purdom did not discharge Jolley.—Norton v. Eastman, 4 Greenl. 521; Babcock v. Bryant, 12 Pick. 134; 12 Mass. 154. The measure might be an advantage, but could not be an injury to the defendant. If the note was a payment of the account, as between the plaintiff and Stokes & Purdom, it cannot have this effect, in relation to the defendant, who has no connection with either the account or the note, and whose guaranty depends upon neither for its obligation.—4 Greenl. 525. Jolley undertook to see the plaintiff paid, and whether the plaintiffs' demand was evidenced by an account or a note, he was bound to "see it paid." It was a mere exchange of securities—an account for a note—having no connection with the defendant's contract. He agreed to see the plaintiffs paid for keeping the horses, and he has not done so.—*Ib.*

4. The failure to give the defendant notice of the acceptance of the guaranty, constitutes no defence.—4 Greenl. 526; 12 Pick. 135; 2 American Leading Cases, 84. This was not a mere proffer to guaranty, as was the case of Martin v. Black, 21 Ala., *supra;* but it was absolute in its terms, and definite as to its extent; and in such cases no notice to the guarantor of acceptance is necessary.—4 Greenl. 526, *supra.* It will be found that all the cases seemingly against this position, were cases in which there were general letters of credit, addressed to no particular person, or in which a future credit was to be given to the person in whose favor the guaranty was drawn, or there was a mere overture to guaranty.—12 Peters 207; 10 *ib.* 482 ; 7 Cranch 69; 1 Mason 323; Croft v. Isham, 13 Conn. 28. See all the cases collected and commented upon, in 2 American Leading Cases, from 62 to 101.

The case of Douglass v. Reynolds, 12 Peters, was the case of letters of credit, of future and contingent sales or advances. Such, also, were the cases of Clark v. Russell, 7 Cranch 69, (92) ; Adams v. Jones, 12 Peters 49, and Edmonson v. Drake, 5 *ib.* 624. In none of these cases was the liability of

the guarantor fixed by the terms of his contract, but was left open for determination by the person to whom the guaranty is given. And in all such cases, the general rule certainly is, that the party on whose option it is dependent for certainty, must give notice how that option is exercised.—2 A. L. C. 63-69. But there can be no room for the application of the doctrine of notice in this case, which only holds good where the liability imposed on the defendant is uncertain in itself, and cannot be reduced to certainty without recourse to information lying more particularly within the knowledge of the plaintiff.—2 A. L. C. 65. Here the person to whom the liability of the guarantor was to enure is clearly designated; so, also, is the period of liability, and the time of payment,— and the only item unnoticed in the guaranty, is the amount he is to pay. But this had already been fixed by the contract between Purdom & Stokes and Walker, and must have been communicated by Purdom to Jolley, at the time Purdom requested him to execute the guaranty. The object of notice of acceptance is, to let the guarantor know the extent of his liability, and if necessary be enabled to take the proper steps to secure himself.—2 Ala. 375. But where he already knows, or has the means of knowing, at the time of the guaranty, there is no reason whatever for the rule requiring notice. Jolley's guaranty was of a subsisting liability, and was as fully known to him, through Purdom, as to Walker himself.

In Weaver v. Wood, 9 Barr 220, it was held, that a party who is induced to adopt a particular course of conduct, by an express promise of compensation, may recover on the promise, without having given any other evidence of his assent to the contract, than by acting under it: And as persuasive to show that this is the true rule, the precedents of declarations on guaranties contain no allegation of any notice of acceptance, but are simply limited to a statement of the undertaking of the defendant, and of the performance of the consideration by the plaintiff.

As to the first charge asked, see 4 Ala. 232. Even if wrong, the record does not show that the defendant was injured by the refusal of the court to give it. It was not made the predicate for any other charge, and as the case stands upon the record, it is immaterial whether it was a promise to pay the debt of another or not.

RICE, J.—Upon an examination of the letter of Jolley to Walker, we construe the words "I will see you paid," as therein used, to mean *I will pay you*.—Birkmyr v. Darnell, 1 Smith's Leading Cases. 316 ; Scott v. Myatt, 24 Ala. 489.— The promise contained in that letter, according to our judgment, is not an undertaking to pay the debt of another. We will state some of the reasons which impel us to that conclusion.

That promise and its acceptance by Walker either discharged the debt of Stokes & Purdom, or did not discharge it. We will first consider the transaction upon the hypothesis, that it did not discharge that debt.

Assuming, then, that the debt of Stokes & Purdom to Walker continued to exist after Walker had accepted Jolley's promise, we remark, that the promise is not to pay any debt of Stokes & Purdom, but to pay "*for keeping Stokes & Purdom's horses and drivers for this quarter*," (that is, the quarter which had commenced some fifteen days before,) at the end of that quarter, "*in Alabama bank-notes*." The debt of Stokes & Purdom was to be paid in money, the entire amount of which the law would force them to pay in gold and silver coin. The promise of Jolley is not to pay in money, but "in Alabama bank-notes"—which, in law, means only what those notes were worth in coin at the time the payment was to be made (the 30th June, 1842). Upon this promise to pay "in Alabama bank-notes," the law would not force him to pay in coin the entire numerical amount which he promised to pay in the notes, unless it were proved that, at the time the notes were to be paid, they were worth as much as coin. On such a promise (our predecessors said), "to compel the debtor to pay in the precious metals the same amount in dollars, which he promised to pay in bank-notes, would be doing him the greatest injustice, and would be, in effect, to change the contract to his prejudice."—Young v. Scott, 5 Ala. 475 ; Carter v. Penn, 4 Ala. 140 ; Wilson v. Jones, 8 Ala. 536.

Suppose that each hundred dollars of "Alabama bank-notes," on the 30th June, 1842, when Jolley was to pay them, were not worth in coin more than seventy dollars; in a suit against Jolley on his promise, on that proof, Walker could recover only seventy dollars for each hundred dollars of Alabama

bank-notes promised him : the payment of the seventy dollars for each hundred promised, would be a full discharge of Jolley from all liability on his promise.  But surely this payment of seventy dollars for the hundred, could not be a full satisfaction of the debt of Stokes & Purdom, which never was payable in bank-notes, but was payable in coin to its full numerical amount.  And if the promise of Jolley had been a promise to pay *this debt of Stokes & Purdom*, it is manifest, that the payment of seventy cents in the dollar could not have legally discharged him from liability.—Cumber v. Ware, 1 Smith's Leading Cases, 378 ; Pearson & Fant v. Thomason, 15 Ala. 700.

The promise of Jolley is subsequent to the creation of the debt of Stokes & Purdom, and is upon a consideration new and distinct in its nature, and did not impose the same duty and obligation upon him which existed against them, and was capable of being discharged by a payment which would not have satisfied in full the debt they owed.  The conclusion, then, is, that the debt for which Jolley is bound, is a new debt, created by his promise, and is not *the same* debt for which Stokes & Purdom are bound.  The promise of Jolley, therefore, in this view of the case, is an *original* undertaking, under the settled rule, that if no other person is liable for *the same* debt for which the undertaking is made, although another person may be liable for a distinct debt which is the measure of the one in question, the undertaking is an original one.— See the note to Leonard v. Vredenburgh, 8 Johns. 23, which is cited and approved in Puckett v. Bates, 4 Ala. 390.

We next inquire, what is the nature of Jolley's promise, if the hypothesis be true, that its acceptance by Walker discharged the debt of Stokes & Purdom.  All the cases agree, that if that transaction operated a discharge of their debt, his promise is an *original* one ; for, in that aspect of the case, his liability on his promise began at the instant of time when theirs ceased.—1 Smith's Leading Cases, 317, and cases there cited.

Our opinion is, that, under all the facts proved in this case, the promise of Jolley, and its acceptance by Walker, was a new contract, on a new and sufficient consideration, which operated instantly as a discharge of the debt of Stokes &

Purdom to Walker, and bound Jolley to pay for keeping the horses and drivers for the quarter mentioned in his letter, "in Alabama bank-notes," at the end of the quarter.—Wallis v. Long, 16 Ala. 738.

The several matters arising on the several exceptions of the plaintiff in error have been carefully considered, but we find nothing in any of them which raises the question of Walker's acceptance as matter of fact, or which warrants us in reversing the judgment, as the record clearly shows that no injury has been done to the plaintiff in error by any of the rulings of the court below.

The judgment is affirmed.