RUTLEDGE'S ADM'R. *vs.* TOWNSEND, CRANE & CO.

[ACTION ON PROMISSORY NOTE, BY PAYEE AGAINST MAKER.]

1. *Sufficiency of consideration.*—Where a third person joins with a debtor in the execution of a promissory note, payable to the creditor, and to be delivered as collateral security for the original indebtedness, the note is without consideration as to him; but a valid promise by the debtor, contemporaneously made, to indemnify him against liability on the note, forms a sufficient consideration to support the note as to the surety.

2. *Certainty requisite in contract.*—A promise by the principal to his surety, made to induce the latter to join with him in the execution of a promissory note, to be delivered to the creditor as collateral security for the original debt, on which the surety was not bound, to the effect that he should be "*amply secured*" against liability on the note, is sufficiently definite and certain to support an action at law, if not performed within a reasonable time before the maturity of the note.

3. *Measure of damages.*—In an action against the maker of a promissory note, which was made and delivered to the plaintiff as collateral security for the debt of another, on which the defendant was not bound, if the plaintiff has received partial satisfaction of the original debt, he is only entitled to recover the balance unpaid.

4. *Satisfaction of execution.*—A sale of property by the sheriff, under the levy of an execution, is, *pro tanto*, a satisfaction of the execution.

5. *Application of money on executions or attachments; presumed existence of common law elsewhere.*—At common law, if several executions or attachments, having equal liens, were levied on the same property, and the proceeds of sale were not sufficient to pay all the debts in full, the funds were divided equally among the several claims, irrespective of their amount; and if the sum thus distributed to any one creditor was more than sufficient to satisfy his debt in full, the surplus was equally apportioned among the other creditors; and this rule of the common law will, in the absence of proof to the contrary, be presumed to prevail in another State.

APPEAL from the Circuit Court of Chambers.
Tried before the Hon. ROBERT DOUGHERTY.

THIS action was brought by the appellees, against the administrator of Charles Rutledge, deceased, and was founded on three promissory notes, which were executed by said Rutledge, jointly with John M. Milner and Martin W. Smith, dated February 5, 1855, and payable to the order of the plaintiffs; one for $2558 79, payable on the 1st May next after date; another, for $2768 77, payable on the 1st January next after date; and the third, for $1050 47, payable on the 1st March, 1856. On the trial, as the bill of exceptions shows, after the plaintiffs had read in evidence the notes on which the suit was founded, the defendant introduced as a witness said M. W. Smith, who was not sued in this action, and who testified, that at the time of the execution of said notes, one of the plaintiffs executed and delivered to him three receipts for them, which had been lost, but copies of which he produced. Each of these receipts, after setting out a copy of one of the notes, acknowledged the receipt of the original "as collateral security for the payment" of certain notes and accounts, which were particularly described, due and owing to Townsend, Crane & Co., some by Milner & Smith, and the others by Milner, Whitlow & Co.; and were signed by Townsend, Crane & Co. "Said witness stated, also, that there was no other consideration for said notes than that shown in said receipts. On cross examination, he was asked, whether or not there was a consideration as between himself and Milner and said Rutledge; to which he answered, that Milner promised Rutledge, if he would sign said notes as surety, that he should be amply secured, but that it was not stated how he should be secured; and there was no evidence that he was ever secured in any way. Said witness was further asked, on cross examination, if the two accounts mentioned in said receipts were not included in said notes, and were not thereby settled and cancelled; to which he answered, that they were

so included, and that he considered them settled, but nothing was said about it at the time ; that the accounts were not receipted, within his knowledge, but they had never been collected or demanded. The defendant objected to the statement of the witness, as to what he 'considered,' and the court sustained the objection. Said witness stated, also, that said Rutledge only signed said notes as surety."

The defendant then read in evidence a transcript, properly certified, from the records of the inferior court of Clark county, Georgia, showing the proceedings there had in an attachment suit, wherein Townsend, Crane & Co. were plaintiffs, and Milner, Whitlow & Co. were defendants. The suit was founded on the notes and accounts described in one of the receipts above mentioned as being due from Milner, Whitlow & Co. to Townsend, Crane & Co. The attachment was sued out on the 10th March, 1855, and was levied on four slaves as the property of W. A. Whitlow. Judgment was rendered for the plaintiffs, on the 22d October, 1855, for $4,789 99. The transcript next contains an entry without date, which states the name of the case, with two other cases against the same defendants, (each case being described as "Attachment, &c., in Clark inferior court,") and then proceeds as follows : "It appearing to the court that the above attachments were levied on sundry negroes, as the property of W. A. Whitlow, one of the defendants, which negroes are now in the custody of the sheriff ; and the above-named plaintiffs having made out and established their demands, and placed the same in judgment of this court,—it is ordered by the court, that the sheriff of said county proceed to sell said property according to the statute in such case provided, and that he pay over the same according to law, in the clerk's office of this court, to abide the order and judgment of this court at the next term thereof, in satisfaction of said attachments." The last entry in the transcript is signed by the sheriff, and states, that the property was sold, under the above order of the court, on the 1st Tuesday in December,

1855, and that the proceeds of sale amounted to $2,210; "which sum," it continues, "is now in hand, and subject to the distribution of the honorable inferior court, less costs and expenses of sale."

"This being all the evidence in the cause, and there being no conflict in the testimony, the court charged the jury, at the request of the plaintiffs, that, if they believed the evidence, they ought to find for the plaintiffs, for the full amount of the three notes sued on; to which charge the defendant excepted," and which he now assigns as error.

WM. P. CHILTON, with whom were RICHARDS & FALK-NER, for appellant.—1. No person can be held to pay the debt of another, unless his promise to do so is in writing, and founded on valuable consideration. The defendant's promise here was in writing, but was without considera-tion. The notes were given and accepted as collateral security for pre-existing debts, on which Rutledge was in no wise bound. No time was given by the creditor, no security relinquished, no debt extinguished; and no injury or inconvenience was suffered. Such a promise will not support an action.—*Jackson v. Jackson*, 7 Ala. 792; *Hester v. Wesson*, 6 Ala. 413; *Williams v. Sims*, 22 Ala. 512; *Nesbit v. Bradford*, 6 Ala. 746; *Miller & Cobb v. McIntyre*, 9 Ala. 638; *Thompson v. Hall*, 16 Ala. 204; *Files v. Mc-Leod*, 14 Ala. 611; *Beall & Co. v. Ridgeway*, 18 Ala. 117; Theobald on Principal and Surety, 6, 7.

2. Milner's promise that, if Rutledge would sign the notes, he should be "amply secured," was too vague and indefinite to support an action at law, or to be specifically enforced in equity. A promise of indemnity, moreover, is nothing more than the law would imply, and forms no valid consideration.—*Crowhurst v. Laverack*, 16 Eng. Law & Eq. 497; *Harris v. Watson*, Peake's R. 72; *Stylk v. Myrick*, 2 Camp. 317; *Callagan v. Hallett*, 1 Caines' R. 104; *Willis v. Peckham*, 1 Brod. & Bing. 515; 1 Metcalf, 276. Besides, there was no privity between Townsend, Crane & Co. and Rutledge, so far as this promise of Milner was

concerned. There is not, to use the language of the court in *Price v. Easton*, (4 Barn. & Ad. 433,) " any evidence that the creditor ever heard of this promise." See, also, *Crow v. Rodgers*, 1 Stra. 592 ; Buller's N. P. 134.; Theobald on Principal and Surety, 6, 7. Suppose Rutledge had sued Milner on this promise ; would it not have been a complete defense, that the notes imposed no liability on him ?

3. The court committed a manifest error, in allowing the plaintiffs to recover the full amount of the notes, when the transcript of the Georgia record showed a partial satisfaction of the original debt, which these notes were given to secure. The levy and sale of property, under execution or attachment, is, *pro tanto*, a satisfaction of the debt; and if the money was taken from the plaintiffs under older liens, or in any other way, the *onus* was on them to show shat fact.

GOLDTHWAITE, RICE & SEMPLE, *contra.*—1. The notes imported a consideration, and the *onus* of disproving that legal presumption was on the defendant. The fact that one of the joint makers of a note signed it without consideration as between him and the payee, and at the request of another joint maker, is not sufficient to destroy the presumption of consideration arising from the note itself: it must be shown, also, that there was no consideration moving between the payee and any of the other joint makers.—*Kinsman v. Birdsall*, 2 E. D. Smith, (N. Y.) 395 ; 1 Comyn's Digest, *Action on the case*, B. 12. The fact that the notes were given as collateral security for antecedent debts, is no defense to the action. No consideration is required, as between the surety and the creditor, to give validity to a note which is given for the debt of a third person, and for the benefit of such third person.—Chitty on Contracts, 453 ; *Lord v. Ocean Bank*, 20 Penn. St. R. 384 ; *Sison v. Kidman*, 3 Man. & Gr. 810 ; *Lathrop v. Morris*, 5 Sandf. 7 ; *Wheeler v. Slocumb*, 16 Pick. 52 ; *Gillet v. Ballou*, 29 Vermont, 296 ; *Loosemore v. Radford*, 9 Mees. & Wels. 657 ; *Morley v. Boothby*, 3 Bing. 107 ; *Caillenx v.*

Rutledge's Adm'r v. Townsend, Crane & Co.

*Hall*, 1 E. D. Smith, 5 ; *Bailey v. Croft*, 4 Taunton, 611 : *Watkins v. James*, 5 Jones' Law R. 105 ; *Tipper v. Bicknell*, 3 Bing. N. C. 710; *Webb v. Rhodes, ib.* 734 ; *Boehm v. Campbell*, 3 Moore, 15 ; *Pace v. Marsh*, 1 Bing. 216 ; *DeWolf v. Raband*, 1 Peters, 500 ; *Carter v. Black*, 4 Dev. & Bat. 425 ; *Evans v. Keeland*, 9 Ala. 42.

2. Milner's promise to secure Rutledge, made to induce the latter to sign the notes as his surety, is sufficient to uphold the notes as to Rutledge, if there was no other consideration. This express promise to secure is different from the promise to reimburse, which the law would imply. It was made before the relation of principal and surety existed between the parties, and to induce Rutledge to assume the relation of surety. It contemplated immediate performance, or, at least, within a reasonable time. That a court of equity would specifically enforce such a promise, see 2 Story's Equity, §§ 850, 851, 730, and notes ; Newland on Contracts, 93 ; *Ranelagh v. Hayes*, 1 Vernon, 189 ; *Pember v. Mathers*, 1 Bro. C. C. 52 ; *Champion v. Brown*, 6 Johns. Ch. 398 ; *Chamberlain v. Blue*, 6 Blackf. 491 ; *Walton v. Coulson*, 1 McLean, 120. That the promise is sufficiently specific, and not void for uncertainty, see *Brown v. Adams*, 1 Stew. 51 ; *Mobile Marine Dock and Mutual Insurance Company v. McMillan*, 31 Ala. 711 ; *Fitzpatrick v. Hanrick*, 11 Ala. 783 : *Prater v. Miller*, 3 Hawks, 628.

3. A judgment recovered is, until satisfied, but a mere security for the original cause of action, and cannot operate to change any other concurrent remedy which the plaintiff may have.—*Drake v. Mitchell*, 3 East, 252 ; *Spivey v. Morris*, 18 Ala. 254; *Leavitt v. Smith*, 7 Ala. 182 ; *Blann v. Crocheron*, 20 Ala. 320. The Georgia record showed no satisfaction, in whole or in part, of the original debt.

A. J. WALKER, C. J.—The evidence in this case conduced to show, that Rutledge, the appellant's intestate, joined in the execution of three promissory notes, to be delivered as collateral security for pre-existing debts, for

which he was in no wise liable; and that those notes were made payable to the creditors whose debts they were designed to secure. It seems, also, from the evidence, that the notes given as collateral security were signed by two others, one of whom was liable upon all the debts intended to be secured, and the other liable upon a part of them; and the evidence conduced to show, that there was no consideration for the new notes, unless it is shown by those facts. The question presented by the charge of the court is, whether a pre-existing indebtedness of one or more of the makers of a note is a consideration to support the note as to one not liable upon the original indebtedness, the note being given as collateral security for the existing debt.

Where one thus makes a promise to pay the pre-existing debt of another, for the purpose of its security, there is no element, either of detriment to the promisee, or of benefit to the promisor; and upon principle it seems clear, that there is no consideration. It is the case of a promise made for a consideration wholly past, and not founded upon the request of the promisor; and can not be distinguished, in principle, from the case where a third person subscribes to an existing note, or guaranties the payment of a subsisting debt, or where an administrator executes his note for a debt of the intestate; in *all of* which cases it is held, that there is no consideration.—*Jackson v. Jackson*, 7 Ala. 792; 1 Parsons on Contracts, 391; Chitty on Contracts, 53, 61, 62, 426; *Hester v. Wesson*, 6 Ala. 415; *Williams v. Sims*, 22 Ala. 512.

We accordingly find, as the principle would lead us to expect, numerous adjudications, that the promise to pay the pre-existing debt of another, founded upon no other consideration than the debt, no matter what form it may assume, is *nudum pactum.*—*Leonard v. Verdenburgh*, 8 Johns. 29; *Clark v. Small*, 6 Yerger, 418; *Commercial Bank v. Norton*, 1 Hill, 501; *Rix v. Adams & Throop*, 9 Vermont, 233; *Littlefield v. Shee*, 2 Barn. & Ad. 811; *Meyer v. Haworth*, 8 Ad. & El. 467; *Bates v. Sturges*, 2 Moore & Scott, 172; (28 E. C. L. 254;) *French v. French*,

2 M. & G. 644 ; (40 E. C. L. 555;) *Russell v. Beck,* 11 Vermont, 166 ; *Barker v. Bucklin,* 2 Denio, 45 ; *Gilman v. Kibler,* 5 Humph. 19 ; *Hopkins v. Logan,* 5 Mees. & W. 241 ; *Deeson v. Gridley,* 15 C. B. 295 ; 1 Amer. Leading Cases, (Hare & Wallace's notes,) 146 ; Chitty on Contracts, 53 ; *Salmon v. Brown,* 6 Blackf. 347 ; *Blunt v. Boyd,* 3 Barb. S. C. R. 209.

The difficulty in this case is not in ascertaining the true principle which must govern it, or in finding authorities to sustain it ; but in harmonizing with it adjudged cases, which the industrious search of counsel has been able to produce from an extensive library. The case of *Sison v. Tidman,* (3 Man. & Gr. 810,) was this : The defendant pleaded, that the note sued upon was given by him and another, for the security of a certain sum due by the other maker, and "that the defendant never had any value or consideration for the note." The plea was held insufficient. A careful examination of the report of the case will show, that it is not opposed to the principle above announced. The note imported a consideration, and the *onus* of showing the want of consideration was upon the defendant. The plea only alleged, that the defendant never had any value or consideration ; while a simnltaneous benefit to the principal debtor, such as a valid agreement for forbearance to sue, would have constituted a sufficient consideration, and such fact may have existed consistently with everything alleged in the plea. So, the decision in *Kinsman v. Birdsall,* 2 E. D. Smith, (N. Y.) 395, rests upon the same principle, and only asserts, that proof, negativing the reception of a consideration by him who joins with a debtor in the execution of a promissory note, is insufficient to sustain the defense of a want of consideration.

*Walker v. Rostrow,* 9 M. & W. 411, was a case in which a tripartite arrangement was made, between a principal, his agent, and a creditor of the principal, that the agent should pay over the money of his principal, when received, on the demand of his principal's creditor ; and it was held, that the creditor could maintain an action against the agent.

This case was obviously unlike the one under consideration. The remark of the court, that the existing debt was a consideration, it will be seen by a close reading of the opinion, has reference to the principal's agreement that his agent should pay over the money to his creditor, and not to the promise of the agent. Certainly, an existing indebtedness is a consideration for a promise by the debtor himself; but whether it is a consideration for a promise by a third person, is altogether a different question. The liability of the agent in *Walker v. Rostrow*, rested upon the consideration of his agency, and of his receiving the money of his principal, and assenting to the transfer of his liability to the creditor.—Addison on Contracts, 945.

An existing indebtedness is a consideration for a promise by a debtor, because a past consideration is sufficient as to the party at whose request, expressed or implied, it was incurred. It is not, however, a consideration as to a third person. An observance of this distinction will show the inapplicability to the question under consideration, of the decisions as to the liability of accommodation makers and acceptors of mercantile instruments. — Chitty on Contracts, 61. Those decisions simply maintain, that the existing debt is a valid consideration as to the debtor; that one who receives such an instrument is a holder for value, and that therefore, by the mercantile law, the defense of a want of consideration can not be made as to him, by an accommodation maker or acceptor. The cases hold, not that there is a consideration, as to the accommodation parties, but that they were precluded from setting up the want of consideration, as to a holder such as is above described. Some of the cases assert the same doctrine, where the instrument is transferred as collateral security; but the law is otherwise in this State.—*Lord v. Ocean Bank*, 20 Penn. St. R. 384; Story on Bills, 212, § 183; *Lathrop v. Lathrop*, 5 Sandf. (Sup. Ct.) R. 7 ; *Grandin v. LeRoy*, 2 Paige's Ch. R. 509 ; *Swift v. Tyson*, 16 Peters, 1 ; *Fenouille v. Hamilton*, 35 Ala. 319. The consideration in the entire class of cases last noticed, for the transfer of the instrument, and

not for the making and acceptance of it, was the point decided.

It is well established, that when a promissory note is given for a subsisting debt, and the note is payable at a future day, the remedy upon the original debt is suspended; and that suspension is a consideration for the new promise. Addison on Contracts, 1117, 1118 ; *Baker v. Walker*, 14 M. & W. 465 ; *Simson v. Lloyd*, 2 C., M. & R. 184. But this principle can not apply in this case, because here the paper is by contract taken as collateral security, and, from the nature of it, such security does not suspend the remedy upon the debt. It is the case of a party's having two securities, the original paper and the collateral ; and he may pursue his remedy upon either, or upon both at the same time.—2 Parsons on Contracts, 198 ; *Emes v. Widowson*, 4 C. & P. 151 ; *Trotter v. Crockett*, 2 Porter, 401.

Without further commenting upon the numerous authorities adduced by the counsel for the appellee, we conclude by saying, that none of them sustain the charge of the court below.

Reversed and remanded.

NOTE BY THE REPORTER.—The foregoing opinion was delivered at the June term, 1861; but a rehearing was afterwards granted, and the cause was held under advisement until the present term, when the following opinion was delivered :

STONE, J.—The parties liable on the original debts of Milner & Smith, and Milner, Whitlow & Co., to Townsend, Crane & Co., are not sued in this action ; and hence we need not inquire, whether these notes are a binding obligation on them, unless that inquiry be material in determining the liability of Mr. Rutledge's administrator.—See the able discussion of that subject in 2 American Leading Cases, Hare & Wallace's notes, pp. 136–8, and the authorities therein collected ; also, *Hopkins v. Logan*, 5 Mees. & Wels. 247.

That which creates some benefit to the party promising, or causes some trouble, injury, inconvenience, prejudice, or detriment to the promisee, is a consideration which will uphold a promise—1 Story on Contracts, § 431; 1 Parsons on Contracts, 358; Addison on Contracts, 942; Chitty on Contracts, 28 *et seq.*; *Violett v. Patton*, 5 Cranch, 142; 1 Com. Digest, 298–9; *Tupper v. Bicknell*, 3 Bing. N. C. 710; Story on Bills, § 183.

The promise of Mr. Rutledge, sued on in this action, was, if the testimony of the witness be believed, a promise to pay the debt of another. The original debt was not extinguished, nor postponed; but the present notes were taken as collateral security to an existing indebtedness. In such case, the general rule is, that there is no element, either of benefit to the promisor, or of detriment to the promisee; and the promise is, therefore, inoperative and void.—*Jackson v. Jackson*, 7 Ala. 791; *Williams v. Sims*, 22 Ala. 512; *Thomason v. Dill*, 30 Ala. 444; Theobald on Principal and Surety, 1 Law Library, 5; *Price v. Easton*, 4 Barn. & Ad. 433; Hare & Wallace's note to *Vadakin v. Loper*, 2 Amer. Leading Cases, pp. 146, 147; *ib.* 126–7; *Alsobrook v. Southerland*, 2 S. & P. 267.

It is contended, that this case is taken out of the operation of the rule above announced, and that the contract is binding, because the promise of the principal makers rests on a valid consideration, to-wit, their antecedent debt to the payees; and that such consideration also upholds the promise of the surety; in other words, that a consideration moving to the principal, will support a promise by principal and surety. This is true, when the consideration is executory, or contemporaneous with the promise, and the latter forms part of the inducement to the former; as, when a sale is made, or injury suffered, or liability incurred; or an agreement that a note with sureties is to be given to secure payment or reimbursement, and such note is consequently given; or, where an existing debt is extinguished, or the day of payment postponed, either expressly, or by implication, in consideration that a note with surety is to be

executed and delivered to the payee, which is accordingly done. In all such cases, the contract is a new, substitutionary one, and is binding. It rests for its consideration, so far as the surety is concerned, on the fact that, without his promise, the contract would not have been consummated. This supplies the element of detriment to the promisee.—2 American Leading Cases, 148 ; *ib.* 137–8; *Jolley v. Walker*, 26 Ala. 690; *Click v. McAfee*, 7 Porter, 62; *Railey v. Croft*, 4 Taunton, 611; *De Wolf v. Raband*, 1 Peters, 476; *Boehm v. Campbell*, 8 Taunton, 679.

But, in this case, none of these ingredients are found. No benefit was received by the promisor; no inconvenience or detriment sustained by the promisee; no extinguishment or delay of the antecedent debt; but, on the contrary, an express agreement, if the testimony be believed, that the new notes were taken only as collateral to the existing indebtedness. This precludes any presumption that the debt was to be postponed until the maturity of the new notes.—See *Baker v. Walker*, 14 Meeson & Wels. 465.

It is also contended, that the promise of Mr. Rutledge is binding, because of the contemporaneous promise made by Mr. Milner, that if he, Mr. Rutledge, would sign the notes, he should be "*amply secured.*" It was not stated how he should be secured; but it is argued, that this supplies the element of benefit to the promisor, and thus forms a consideration for the promise.

If this promise be simply an agreement by the principal to pay the notes at maturity, or to repay to Mr. Rutledge what he should be required to pay on them, it was nothing more than the duty imposed on him by law, and, hence, would not furnish a consideration to uphold the promise.— See *Callagan v. Hallett*, 1 Caines' Rep. 104; *Stilk v. Myrick*, 2 Camp. 317. But we think it meant, that Mr. Rutledge should be "amply secured" before the maturity of the notes; that is, presently, or within a reasonable time. Such being its construction, the question arises, is this promise sufficiently specific to found a right upon, or is it void for uncertainty?

We need not inquire whether this contract could be specifically enforced in equity.—See *Ranelagh v. Hayes*, 1 Ves. 189; *Chamberlain v. Blue*, 6 Blackf. 491; *Champion v. Brown*, 6 Johns. Ch. 398; *Moseley v. Virgin*, 3 Ves. 184; *Casey v. Holmes*, 10 Ala. 777; Adams Equity, 351; *Colson v. Thompson*, 2 Wheat. 236; *Harnett v. Yeilding*, 2 Sch. & Lef. 554; *Lord Ormond v. Anderson*, 2 Ball & Beatty, 363; *Tutham v. Platt*, 15 Eng. L. & Eq. 190; *Jackson v. Cacker*, 4 Beav. 59; *Hopcroft v. Hickman*, 2 Sim. & Stu. 130; *Boston & Maine R. R. v. Babcock*, 3 Cush. 228; *King v. Thompson*, 9 Peters, 304; 2 Parsons on Contracts, 525; 2 Phil. Ev. (C. & H. Notes, 4 Am. ed.,) 748–9; *ib.* 785; 1 Greenl. Ev. § 300; Theobald on Pr. & Surety, 7; *Jones*, dem. *Henry, v. Hancock*, 4 Dow. 145; *Hoffman v. Hankey*, 3 Mylne & K. 376; *Pollard v. Maddox*, 28 Ala. 321.

Is the promise in this case sufficiently definite to found an action at law upon? A majority of the court think it is; and that in the event the promisor, Mr. Milner, failed to furnish ample security, within a reasonable time after notice, an action at law could have been maintained for a breach of promise, without alleging or proving special damage, and without waiting for the maturity of the notes on which Mr. Rutledge was surety. We deem it unnecessary to inquire what would have been the measure of Mr. Rutledge's recovery. The promise conferred on him a legal right, which he did not enjoy without it; a right, for the violation of which he could maintain an action; and that legal right, simultaneously conferred, is a valuable consideration to Mr. Rutledge, and upholds his promise made to appellees.—*Brown v. Adams*, 1 Stew. 51. The disproportion between the benefit received, and the liability incurred, is immaterial. The law does not require that the consideration, on which an executory promise rests, shall be adequate. It is enough if it be valuable.—Shepherd's Digest, 492, § 70.

It results from what we have said above, that the circuit court rightly instructed the jury to find for plaintiffs, if

they believed the evidence. The court, however, went further, and told that body, "that if they believed the evidence, they ought to find for the plaintiffs, for the full amount of the three notes sued on." In this the court erred. The bill of exceptions informs us that it contains all the evidence. In the record from the inferior court of Clark county, Georgia, it is shown that, in the suit on the original notes, to which those which are the foundation of the present action are collateral security, four slaves were seized under attachment, and were afterwards sold under an order of court issued for that purpose; and that the proceeds of the same, twenty-two hundred dollars, were in the hands of the sheriff, " subject to the distribution of the honorable inferior court, less costs and expenses of sale." This sale and return of the sheriff were made after judgment was rendered in the attachment suit in the State of Georgia, but long before the trial of the present suit in the circuit court. The present record is entirely silent on the subject of the disposition of these funds, further than may be inferred from what is stated above. These facts, unrebutted and unexplained as they are, bring this case directly within the operation of the general rule, which holds that "when property is levied on and sold under an execution, it is a satisfaction of the execution, to the extent of the proceeds of the sale."—See *Niolin v. Hamner*, 22 Ala. 581 ; *Campbell v. Spence*, 4 Ala. 550; *Moore v. Barclay*, 18 Ala. 672; *Kelly v. Governor*, 14 Ala. 544; *Bondurant v. Buford*, 1 Ala. 159; Crocker on Sheriffs, section 432, and notes.

It is contended, however, that the money realized from the sale of the four slaves can not be regarded as a payment in this case, because, so far as we are informed, the money was not ordered to be paid to the plaintiff; but, on the contrary, the order of the court was, " that the sheriff of said county proceed to sell said property according to the statute in such case provided, and that he pay over the same according to law, in the clerk's office of this court, to abide the order and judgment of this court at the

next term thereof, in satisfaction of said attachments." It is further objected against the allowance of this alleged payment, that, inasmuch as no distribution of the funds is shown to have been ordered by the inferior court of Clarke county, Georgia, and no evidence furnished of the amount of *costs and expenses*, no correct data are furnished, by which the jury could determine the amount of credit to which defendant was entitled.

To this we answer, that the sale by the sheriff divested the title of the property out of the defendants ; and this, unrebutted, operates a payment *pro tanto*.—See authorities *supra*, and *People v. Hopson*, 1 Denio, 574. In the second place, the rule of the common law, which, in the absence of proof to the contrary, we must presume prevails in Georgia, is, that where property is simultaneously levied on under two or more executions or attachments, and the property is not of value sufficient to pay and discharge all the debts thus levied, the liens being equal, the money, irrespective of the amounts of the several claims, must be applied equally to the several debts, unless a surplus remains after a full payment of one or more of the claims. In case there be such surplus, that must be applied equally to the balance of the unpaid debts. In other words, that the varying amounts of the debts under which the levies are made, exert no influence in the distribution of the funds, except as to the surplus that may remain after the extinguishment of one or more of the debts.—See Crocker on Sheriffs, § 434 ; Drake on Attachments, §§ 260-261 ; *Campbell v. Rodger*, 1 Cow. 215. From this principle it results, that the defendant was, under the most favorable view we can take for the plaintiffs, entitled to a credit for one third of the sum for which the negroes were sold, less the costs and expenses. Perhaps this *prima-facie* view can be overturned ; but there is nothing in this record to destroy its effect. We hold, that it was the duty of the plaintiffs, in the attachment suit in Georgia, to have a proper distribution made of the funds raised there; and, unless they show that their share of the pro-

ceeds of the slaves is reduced, or taken away by some paramount lien or liability, they must submit to a proper abatement of their present demands.

It can scarcely be necessary to add that, if the testimony of the witness be believed, a payment, in whole or in part, of the principal debt, is a payment *pro tanto* of the collateral security. This grows out of the fact that the later notes were executed expressly as collateral security to the former set, and are not the evidences of a separate and independent debt.

For the single error above pointed out, the judgment of the circuit court is reversed, and the cause remanded.