## SANFORD *vs.* HOWARD.

[ACTION ON VERBAL PROMISE TO PAY FOR GOODS FURNISHED TO THIRD PERSONS.]

1. *Promise construed, and held not within statute of frauds.*—A promise by an executor, in these words : " Let the children of J. M., deceased, have any goods they wish, and charge them to the children separately, and I will pay for them at the end of the year, or as soon as the cotton crop is sold,"—is a direct, and not a collateral undertaking, and binds the promisor personally, although he was authorized by the will to supply the children with goods, and both he and the creditor expected payment to be made out of the estate, and the goods were charged to the children.
2. *Contract of trustee binds him personally.*—The purchases of trustees, executors, administrators, and guardians, when made in obedience to the duties of the trust, impose upon them a personal liability : the seller must look to them for payment, and they must look to the trust estate for reimbursement.
3. *Assent of parties.*—It is not necessary that the mutual assent of the parties, which is essential to the completion of a contract, should be concurrent: if the party making the offer does not require an immediate response, and the offer itself seems to assume and contemplate its acceptance, the assent of the other party will be implied, in the absence of a revocation of the offer, from his acting upon it within a reasonable time.
4. *Construction of contract as to intention of parties.*—A contract, which the parties intended to make, but did not make, cannot be set up in place of one which

Sanford v. Howard.

they did make, but did not intend to make ; as where a promise to pay for goods, to be furnished to another, is unlimited as to quality or amount, the promisor's liability is not affected by his intention that goods of a certain character only should be furnished, and the fact that this intention was known to the creditor.

5. *As to delegation by agent of his authority.*—The principle that an agent cannot delegate his authority to another, has no application to a case in which an executor is sought to be charged personally on his direct undertaking to pay for goods furnished to his testator's children, and the goods were procured by the children through their servants : the executor's liability, in such case, does not turn on the agency of the children.

6. *Admissibility of testator's will as evidence in construing executor's contract.*—In such case, the testator's will is irrelevant and inadmissible, since the construction of the executor's contract is altogether foreign and disconnected from his authority under the will.

7. *Competency as witness of person to whom goods were furnished.*—The person to whom the goods were furnished, a minor, is a competent witness for the creditor, to prove the amount and value of the goods, and the character of the defendant's promise.

8. *Institution of suit against person to whom goods were furnished.*—The fact that the creditor instituted a suit against the children, to whom the goods were furnished at the executor's request, is admissible evidence for the executor, in an action seeking to charge him personally, as affecting the question whether the alleged promise was really made, and whether the goods were sold in pursuance of it.

9. *Res gestæ as to institution of suit.*—It being shown that the creditor instituted suits against the children to whom, at the defendant's request, the goods were furnished, and that these suits were instituted by the advice of an attorney, the information on which the attorney's advice was predicated, " that the children said they were willing that he might sue and recover judgments against them, or resort to any other means which might be deemed advisable for the collection of the debts," is admissible evidence as a part of the *res gestæ*, if on no other ground.

APPEAL from the Circuit Court of Bibb.

Tried before the Hon. ROBERT DOUGHERTY.

THIS action was brought by Charles Sanford against George W. Howard, to recover the price of certain goods and merchandize, which were sold and delivered by plaintiff to the minor children of Jacob Mayberry, deceased, on the defendant's verbal promise, which, as proved by plaintiff's clerk, was in these words : " Let the children of Jacob Mayberry; deceased, have any goods they wish, and charge them to the children separately, and I will pay for them at the end of the year, or as soon as the cotton crop is sold." The defendant

pleaded the general issue, with leave to give any special matter in evidence.

On the trial, as the bill of exceptions shows, the plaintiff proved, by his clerk, that the defendant made the promise above stated ; and that the goods were thereupon furnished to the children, and were charged to them separately. He then offered the deposition of Priscilla Mayberry, one of the children to whom the goods were furnished, "who was a grown young lady, though under twenty-one years of age," to prove the correctness of the account sued on, as to goods which were sold and delivered to her, and the defendant's liability for the payment of the same. The defendant objected to the deposition, at the time it was taken, on the ground that the witness was interested in the result of the suit. On the defendant's motion to exclude the deposition on this ground, "it was shown to the court, that said Jacob Mayberry made and published his last will and testament in his lifetime, in which he appointed the defendant his sole executor, and gave his property to his widow and children ; that the real and personal estate of said testator was worth about $50,000 ; that the defendant probated the will on the 29th December, 1851, and qualified as executor on the 12th January thereafter, and took possession of all the testator's property." The court excluded the deposition, and the plaintiff excepted.

"The defendant offered in evidence a transcript of the record and proceedings of a cause in the chancery court of said county, wherein he was complainant, and the children of said testator were defendants ; also, a copy of the chancellor's decree, and of a petition by plaintiff and others, which was admitted to be in the handwriting of plaintiff's attorney." This transcript, though the bill of exceptions says that it is thereto annexed as an exhibit, nowhere appears in the record. The plaintiff objected to the admission of the petition, the chancellor's decree, and the entire transcript, on the ground that they were illegal and irrelevant ; the court overruled the objections, and "suffered them to be read in evidence, but for no other purpose than to show that plaintiff looked to the estate of Mayberry for payment, and expressly charged the jury accordingly ; and plaintiff excepted."

Sanford v. Howard.

" The defendant offered in evidence, also, the records of this court, showing that plaintiff, on the same day this suit was instituted, also sued out a separate summons and complaint against each one of said children, for the recovery of the same identical goods for which this action was brought ; and that said suits are still pending." The plaintiff objected to the introduction of this evidence ; his objection was overruled, and he excepted. The plaintiff afterwards proved, " by the attorney who prepared and issued said summons and complaints, that he told plaintiff, at the time he prepared and issued them, that his suing the children would not prejudice his right of action against the defendant ; and then offered to prove, that said attorney, at the same time, and in the same transaction, was informed that said children, a short time previously, had told plaintiff they were anxious that said accounts should be paid, and were willing for plaintiff to sue and recover judgments against them, or to resort to any other means which might be deemed advisable for the collection of the same." The defendant objected to the introduction of the evidence thus offered ; the court sustained the objection, and rejected the evidence ; and the plaintiff excepted.

" The defendant offered to prove, by divers witnesses, that the children of said testator were frequently seen, in the year 1852, apparently shopping in the other stores in said town of Centreville ; and that the negro servants of the family were frequently seen passing from said stores to the dwelling-house of the family, with goods and merchandize, but without proving the particular kind or value of said goods, or the particular persons for whom they were designed. After the defendant had proved, that he heard plaintiff say, in April, 1852, that defendant was complaining about the extravagance of the Mayberry children, and about their buying goods at the various stores in Centreville ; and that plaintiff, during the year 1852, was attending to his business near said stores, —he offered to prove, that the goods taken from one of said stores were carried along the street, sometimes near by plaintiff's store door, and sometimes on the opposite side of the street. The plaintiff objected to the introduction of this

evidence, on the ground that it was illegal and irrelevant; the objection was overruled, and the plaintiff excepted." .

" The plaintiff introduced evidence, tending to show that the children of said testator, during the lifetime of their father, and for several years before his death, were in the habit of dealing liberally in said stores, and with plaintiff, and bought as many goods, and dressed as expensively during that time ; that their store accounts for the year 1851 amounted to about $2,600, and were paid by the defendant, as executor, about the first of the year 1853 ; that the defendant is the uncle of said children, and has resided, for the last fifteen years, within a half-mile of Centreville ; that he had knowledge of the expensive habits of said children, before he authorized plaintiff to let them have goods, as above stated, and promised to pay for them ; that in April, 1852, he said to Hiram Butler, one of said merchants, that said children, and especially Priscilla and Theresa, were dealing too extravagantly in said stores, and that he would be compelled, unless they did better, to stop their dealing or credit,—that he did not expect them to be restricted to necessaries, as they were not accustomed to it, and had not been brought up in that way. Other evidence was also introduced, tending to show that defendant, early in the spring of 1852, was cognizant that said children were dealing expensively at said stores ; that plaintiff, during the time said accounts were being contracted, and afterwards, looked to the estate of Mayberry for payment. It was shown, also, that all of said children were under the age of twenty-one years ; that they neither owned, nor were interested in, any other property than that which the defendant held as executor as aforesaid; and that the estate of said Mayberry raised cotton in the year 1852. The defendant offered in evidence a copy of the will of said testator, to which, as being illegal and irrelevant, the plaintiff objected ; but the court overruled the objection, and plaintiff excepted."

On this evidence, the court charged the jury,—

" 1. That if they believed from the evidence that the defendant, being the executor of the estate of Jacob Mayberry, deceased, directed the plaintiff, about the first of the year 1852, to sell goods to the children of said Mayberry, and to

charge the same to each one of the children separately as they were bought, and said that he would pay for them at the end of the year, or when he sold the cotton ; and that plaintiff, knowing defendant to be such executor, did thereupon sell the goods sued for to the said children, and charged them to the children,—expecting payment from the defendant as executor of said Mayberry, and not from him individually,— then plaintiff cannot recover in this action ; and the jury may look to his acts and declarations, to show from what source he looked for payment.

" 2. If the jury believe from the evidence, that the defendant, being the executor of the estate of said Jacob Mayberry, about the first of the year 1852, directed plaintiff to let the children of said Mayberry have goods, and to charge them to each of them as they bought the same, and said that he would pay for them at the end of the year, or when he sold the cotton ; and that plaintiff, knowing that defendant was such executor, afterwards sold goods to said children, and charged the same to each of them as they bought the same, and understood and expected to receive payment therefor from the estate of said Mayberry, through the defendant as executor of said estate,—then plaintiff cannot recover in this suit, and they must find a verdict for defendant.

" 3. If the jury believe from the evidence, that the defendant, being the executor of the estate of said Mayberry, about the first of the year 1852, directed plaintiff to let the children of said Mayberry have goods, and to charge the same to each one of them as they respectively bought the same, and said that he would pay for them at the end of the year, or when he sold the cotton ; and that plaintiff knew, at the time of this statement, that defendant was executor as aforesaid ; and there was no evidence to show that plaintiff agreed with defendant that he would sell goods to the children as requested, or that he informed defendant that he was acting on what he said to him,—then the jury must find for defendant.

" 4. If the jury believe from the evidence, that the defendant, about the first of the year 1852, after he became executor of said Mayberry, went to plaintiff's store, and said to him, in substance, ' Let the children of Jacob Mayberry have goods, and charge the goods to each as they respectively get the

same, and I will pay for them at the end of the year, or when the cotton is sold'; and that plaintiff knowing at the time that defendant was executor as aforesaid, and expecting to get payment therefor from the estate of said Mayberry, through defendant as executor, sold the goods now sued for to said children,—then the plaintiff cannot recover in this action, although the jury may believe that he sold all the goods sued for to said children, and they cannot return a verdict for him.

"5. If the jury believe from the evidence, that the defendant, being the executor of said Mayberry's estate, about the first of the year 1852, said to plaintiff, who knew that he was such executor, 'Let the children of Jacob Mayberry have goods, and charge them to them as they respectively buy the same,—said defendant intending at the time that the plaintiff should only sell such goods as were necessary and proper for said children to have; and that plaintiff knew that such was defendant's intention,—then plaintiff, if entitled to recover anything, can only recover such articles as were proper and necessary for said children to have, their estate and circumstances in life being considered.

"6. If the jury believe from the evidence, that the plaintiff is entitled to recover anything, then they must find a verdict only for the items in the accounts of Priscilla and Theresa Mayberry which are proved to have been sold to the children themselves, and not for any items bought by the negroes, or by any other person in their names.

"7. Under the will of said Mayberry, the defendant, as executor, would not be authorized to pay the accounts sued on; and if paid by him, he will not be allowed credit therefor as executor, except so far as they may be necessaries for the children.

"8. Although the defendant may have funds in his hands belonging to the estate at the time of the executor's return, that fact creates no liability on him to pay the account sued on."

The plaintiff excepted to each one of these charges, and requested others which it is unnecessary to notice; and he now assigns as error the rulings of the court on the evidence, and the charges given.

Wm. M. Brooks, for the appellant, and I. W. Garrott, *contra*, argued all the points presented by the assignments of error.

Walker, J.—Whether the defendant's promise was within the statute of frauds, is one of the questions of this case.   The promise, with its accompanying declarations, was as follows: " *Let the children of Jacob Mayberry, deceased, have any goods they wish, and charge them to the children separately ; and I will pay for them at 'the end of the year, or as soon as the cotton crop is sold."* . This promise was a direct, and not a collateral undertaking, unless the direction to charge the children gives it a different aspect.—Rhodes v. Leeds, 3 St. & P. 212 ; Bates v. Starr, 6 Ala. '697 ; Oliver v. Hire & Le-Barron, 14 Ala. 590 ; Scott v. Myatt & Moore, 24 Ala. 489. If the persons who procured the goods are liable, then, under a rule long established, the promise would be collateral.— Puckett v. Bates, 4 Ala. 390 ; Leland v. Creyon, 1 McCord, 100 ; Cutler v. Hinton, 6 Randolph, 509 ; Ware v. Stephenson, 10 Leigh, 155. If, therefore, under the contract the children were liable at all, the promise would be deemed collateral.    What would be the effect of the fact, unexplained, that the goods were charged to the respective persons who procured them, is not a question in this case. No authority can be found contradictory of the position, that it is a question of intention, whether charging the goods to the person receiving them proves that the credit was given to him.— Cutler v. Hinton, *supra ;* Scott v. Myatt & Moore, *supra.* The intention of the defendant to bind himself by his promise, notwithstanding the goods might be formally charged to the respective persons procuring them, is shown by the contract itself.    The promise was, that if the plaintiff would let the children of the deceased have any goods they wanted, and charge them respectively, he, the defendant, would pay for them at the end of the year, or when the cotton was sold. The act of charging the goods to the children thus appears to be consistent with the terms of the promise, and can contribute nothing to prove that promise to be collateral ; because it asserts, unconditionally, that if the goods were so charged,

the defendant would pay for them at the end of the year, or when the cotton should be sold.

The promise is one which, by its terms, imposes a personal liability upon the defendant ; and notwithstanding he may have been an executor, authorized by the will to supply goods to the children of the deceased, and intended, at the time he made the promise, to pay out of the estate of the deceased, and the plaintiff himself expected payment to be made from that source, the defendant is personally liable on his promise. The purchases of trustees, including executors, administrators and guardians, when made in obedience to the duties of the trust, impose upon them a personal liability.  The seller must look to them for payment, and they must look to the trust estate for reimbursement.—Simms v. Norris & Co., 5 Ala. 42 ; Jones v. Dawson, 19 Ala. 672 ; Kirkman, Abernathy & Hanna v. Benham, 28 Ala. 501 ; Johnson v. Gains, 8 Ala. 791 ; Peters v. Heydenfeldt, 3 Ala. 305.

The assent of the minds of both parties is necessary to constitute a contract ; and if one make a proposition, he may recall it at any time before its acceptance ; but it is not necessary that the mutual consent of the two minds should occur at the same time.—Falls & Caldwell v. Gaither, 9 Porter, 605. The defendant did not require, and the promise itself did not from its nature exact, an immediate response.  The promise itself seems to assume its acceptance, and to contemplate the supply of the goods, and the debiting of the persons indicated, as the next step on the plaintiff's part.  It was, therefore, certainly not necessary that the assent of the plaintiff's mind should have been given at the time of the promise. From the supply and charging of the goods to the persons indicated in the promise, in pursuance to it, and in the absence of its revocation, if made within a reasonable time, the law would imply the assent to the defendant's promise.—1 Parsons on Contracts, book 2, ch. 2, pp. 399 to 403.

The first four charges given by the court are inconsistent with the principles above laid down, and we decide that the court erred in giving them.

The promise presented in the fifth charge, differs from that proved, in its omission of the direction to " let the children have any goods *they wished* " ; and we are not certain that

there was any testimony upon which the charge could be predicated. But, waiving those questions, we decide, that the proposition asserted by the charge is not the law. The proposition, condensed, is, that although the defendant promised to pay for the goods sold, without imposing any restriction as to the quality or amount; yet, if the defendant had the intention that the plaintiff should sell only goods of a certain character, and that was known to the plaintiff, there would be no liability for any other kind of goods. The contract set forth in the charge, is plain, ' intelligible, and free from ambiguity ; the legal obligations resulting from it are equally plain ; and the naked question is, can this contaact, free from ambiguity, not shown to be tainted by fraud, or to· have been made through mistake, be modified materially as to its terms, so as to conform to an intention, variant from it, of one of the parties, known to the other. We decide this question in the negative. In sustaining the charge, we should not construe or interpret the contract of the parties according to their intention in making it, but change it into a conformity with an intention outside of the contract. "A contract, which parties intended to make, but did not make, cannot be set up in the place of one which they did make, but did not intend to make."—2 Parsons on Contracts, 9 ; Benjamin v. McConnell, 4 Gilman, 536.

We proceed to lay down the principles which we deem applicable to the questions presented in the other charges given by the court. A separate examination of each charge is not necessary. The children, for whom the defendant undertook, might, consistently with the terms of the contract in this case, procure the goods through their servants ; but the authority of the servants must be shown, as in other cases. If the defendant is liable upon the contract at all, it is not for purchases by the children as his agents, but for themselves on his account ; and therefore the doctrine that delegated authority cannot be delegated has no application.

The questions, whether the executor of the last will and testament of the deceased would be allowed to pay the accounts out of the assets of the estate, or whether he had funds of the estate in his hands, or what his authority was under the will, are altogether foreign to the case. If there is any

liability at all, it is personal, and cannot be affected by any of those matters. No charges should, therefore, have been predicated upon the supposition, that such matters affected the liability in this case; and the will itself was irrelevant and inadmissible as evidence.

Priscilla Mayberry, upon the proof before us, was a competent witness for the plaintiff. If the plaintiff in this suit recover from the defendant, for the goods sold to her, she is liable over to the defendant; and would, therefore, be interested in favor of the defendant, as to the question of the amount and value of the goods supplied to her. Upon the question, whether the promise is direct or collateral, her interest is balanced. If the liability is original, she would be responsible to the defendant for the recovery from him. If the liability is collateral, she is primarily responsible to the same extent to the plaintiff. The authorities cited below are conclusive on this last point. In the case cited from Leigh's Reports, it is intimated, that one standing in the position of the witness is responsible to the defendant for the costs of the suit, and would therefore probably be interested for him. Ware v. Stephenson, 10 Leigh, 155; Cochran v. Dawson, 1 Miles, 276; Goodman v. Love, 1 Car. & P. 75, (11 E. C. L. 321). What is said above, as to the interest of Priscilla Mayberry, is upon the supposition, that the goods obtained by her were of such character that she might be liable notwithstanding her infancy. If the goods were not such that she, being an infant, could be liable for them, it is clear that she could not have any interest in the case.

The bill of exceptions does not disclose what the chancery record offered in evidence contained; and we are unable, on that account, to decide the question in reference to its admissibility.

The fact of plaintiff's commencing suits against the children, for the goods charged to them respectively, was admissible evidence, as affecting the question, whether the defendant really made the promise alleged, and whether the goods were sold in pursuance to that promise.—Clealand v. Walker, 11 Ala. 1058.

The plaintiff offered, in explanation of his commencing those suits, to prove the advice of his attorney that it would

not prejudice his action against the defendant ; and also, that information was given . the attorney, at the same time, that the children were willing that he should sue and recover judgment against them, or adopt any other means for the collection of the debts.   These declarations were made at the time when the suits were commenced, and must be regarded as explanatory of the act of commencing them, and were therefore a part of the *res gestæ*, and admissible on that ground, if no other.

Having decided that the liability of the defendant does not depend on the question of necessaries, it follows that, in our judgment, the testimony as to carrying goods by the door of the plaintiff's store, was irrelevant.

The judgment of the court below is reversed, and the cause remanded.