# Clark *v.* Jones & Brother.

*Action on Common Counts, for Goods Sold and Delivered.*

1. *Statute of frauds; promise to answer for debt, default. or miscarriage of another.*—When goods are sold to one person, or at his instance, for the use and benefit of another, and the sole credit is given to him, his promise to pay for them is an original and absolute undertaking, and not a promise to answer for the debt, default, or miscarriage of another (Code, § 1732) ; otherwise, if any credit whatever was given to the person for whom the goods were bought.

2. *Same; words of doubtful meaning* —Where the plaintiffs testify that the defendant applied for the goods in the name of a company of which he was a member, but they refused to sell on the credit of the company, and proposed to let the company have the goods on his credit, to which he agreed ; but further, on cross-examination, that they agreed to take, at the expiration of thirty days, the company's acceptance with the defendant's indorsement for the balance not paid for by the acceptance of

[Clark v. Jones & Brother.]

a third person, which was received as cash; while the defendant denies that he ever offered, directly or indirectly, to become responsible for the goods: *Held*, that the words used might import (1) a collateral undertaking by defendant to indorse the company's acceptance, which would be within the statute of frauds, or (2) an original and independent promise to pay for the goods, with an understanding that plaintiffs would take, in lieu thereof, at the expiration of thirty days, the company's acceptance with the defendant's indorsement, which would be a novation of the original contract, and not within the statute of frauds; and the words being susceptible of these two meanings, it was a question for the jury to determine which was intended by the parties.

3.  *Same; charging goods on books to third person, and extending time of payment.*—The fact that the goods were charged on the plaintiffs' books to the company for which they were bought, with the words added, "*Vouched for by*" defendant, does not conclusively show that any credit was given to the company, especially when they were so charged at the instance and request of the defendant; and the fact that plaintiffs afterwards took the company's acceptance for the balance, and then their note with a further extension of time, though proper for the consideration of the jury in determining whether any credit was given to the company, does not conclusively establish, as matter of law, that credit was so given, when it also appears that plaintiffs notified defendant, at the time, that they did not intend thereby to release him.

4.  *Company, as corporation, or partnership.*—The name *Wetumpka Lumber Company* does not, *ex vi terminorum*, import that the company is a corporation, rather than an unincorporated association, or a partnership; nor does any presumption of incorporation arise from the fact that its business is transacted by and through a president and secretary; and where the plaintiffs declare against the defendant individually, but seek to charge him with the debt of the company as a partner, and adduce evidence *prima facie* establishing a partnership, the *onus* of proving incorporation is on the defendant.

5.  *Action against partner, for debt of partnership.*—In an action against a partner individually, the complaint containing the common counts only, a recovery may be had on proof of a debt against the partnership.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by W. B. Jones & Brother, suing as partners, against Henry W. Clark, and was commenced on the 17th September, 1886. The complaint contained only the common counts, claiming $500 "due from defendant by account on 1st January, 1886, for money loaned by plaintiffs to him, and the like sum, due on said 1st January, 1886, for merchandise, goods and chattels sold by plaintiffs to him during the year 1885." The defendant pleaded the general issue, the statute of frauds, and payment; and issue was joined on these pleas. W. B. Jones testified on behalf of the plaintiffs, as appears from the bill of exceptions, that defendant came into plaintiffs' store one day in October, 1885, and said that he wanted to get some goods "for his company," the Wetumpka Lumber Company, which he said, in reply to an inquiry by Jones, was composed of himself,

his son, and W. R. Weston, and "was good." Jones said: "I don't know anything about the company, but I know you, Mr. Clark, and I will let your company have goods on your credit;" and repeated: "I will sell you the goods, or to the company on your credit." He further testified, that the defendant "agreed to this, but requested witness to have the account made out against the company, for the purpose of enabling him to settle with his company; and witness agreed to this." It was agreed, also, that plaintiffs would take the acceptance of one P. H. McEachin, for something less than one hundred dollars, as part payment in cash; and the acceptance was delivered a few days afterwards, and was paid at maturity. This action involves only the unpaid balance, $273.91, or, possibly, includes a small bill of goods sold and delivered several days after the first; the verdict for plain-, tiffs being for $328.69.

Said Jones further testified, on cross-examination, "that when defendant first applied to get the goods for his company, he (witness) agreed that for all goods over and above those paid for by the McEachin acceptance defendant was to settle, at the expiration of thirty days, by giving the acceptance of the company, indorsed by himself." Two of the plaintiffs' clerks, who heard the conversation between Jones and Clark, testified substantially as Jones had. Jones testified, also, "that at the time he had the conversations and transactions with defendant, he understood that the Wetumpka Lumber Company was a corporation—thought it was from its name, but knew nothing about it." The defendant testified in his own behalf, "that he told plaintiffs he wanted the goods for his company, but never offered, either directly or indirectly, to become responsible for them, and was never asked to become so until about November 14th, when the time came to give the acceptance, but he did not, specifically, deny the conversation as detailed by Jones and his two clerks."

It appears from the plaintiffs' books, which were in evidence, that the goods were there charged to the Wetumpka Lumber Company, with the words added, "Vouched for by H. W. Clark;" but their clerk testified, that he added these words some time subsequently, by the direction of W. B. Jones, who said his original entry was wrong. At the expiration of about twenty days, the defendant called at the plaintiffs' store, when, as Jones testified, "they demanded that he either pay the balance of the bill, after deducting the

[Clark v. Jones & Brother.]

McEachin acceptance, or give the paper of his company, indorsed by himself; that he refused to do so, but assured plaintiffs that, if they would draw on the company for the balance of the account, payable on 21st December, the company would certainly pay it;" and thereupon Jones wrote a draft for $277.65, dated November 14th, and payable December 21st, on which defendant wrote the acceptance of the company, by himself as its president. The acceptance not being paid at maturity, a note for $280.83 "was taken in lieu of it," as Jones testified, "on the assurance of Clark that it would be paid at maturity;" the note being dated December 28th, payable on January 21st, and the name of the company being signed to it, "by H. W. Clark, Jr., secretary." The plaintiffs' testimony showed that they took said acceptance and note, not as payment, but under protest, and only on the assurance of the defendant above stated; and that they informed him, at the time, they would not release him from his liability to them for the account."

The court charged the jury, *ex mero motu*, as follows: "If the jury believe from the evidence that the goods were sold to a firm of which the defendant was a member, then he would be liable therefor in this action." To this charge the defendant excepted, and also to several charges which were given on request of the plaintiffs, among them the following: (1.) "If the goods were sold by plaintiffs at the request of H. W. Clark, and on his credit; then he would be liable, and the statute of frauds would be no obstacle to a recovery." (3.) "If the evidence shows that the Wetumpka Lumber Company was composed of H. W. Clark, Weston, and H. W. Clark, Jr.; then, if the goods were sold at the request of H. W. Clark, then he would be liable as a partner, unless it is shown that said company is a corporation, and it is not necessary to declare against him as a partner." (4.) "Even if the goods were charged directly to the Wetumpka Lumber Company, and Clark's name nowhere appeared on the account, still the plaintiffs may explain why that was done." (5.) "If the entry was innocently made by the shipping-clerk, plaintiffs would have the right to correct it, in order to make it conform to the terms of the original sale." (6.) "If the jury believe from the evidence that the credit was given to Clark on the sale of the goods, then it matters not how they were charged, and plaintiffs would be entitled to recover." (7.) "The fact that plaintiffs took a draft accepted by the Wetumpka Lumber Company, and afterwards a note of the

company in renewal of the draft, is subject to explanation by them; and if the jury are satisfied from the evidence that neither was taken by them with the intent of accepting said company as paymaster instead of Clark, but that it was merely done at his request; then he is not released, if he was originally bound for the payment of the account." The defendant also requested several charges in writing, duly excepting to their refusal, and among them the following: (1.) "If the jury believe all the evidence, they will find for the defendant." (2.) "It is not the duty of the defendant, in this case, to prove that the Wetumpka Lumber Company was a corporation."

The charges given, and the refusal of the charges asked, are now assigned as error.

TOMPKINS, LONDON & TROY, for appellant.—(1.) On the plaintiffs' own testimony, the defendant's promise was a collateral undertaking, and void under the statute of frauds. Browne on Stat. Frauds, §§ 174, 183; *Carville v. Crane*, 40 Amer. Dec. 364; *Taylor v. Drake*, 53 Amer. Dec. 680; *Foster v. Napier*, 74 Ala. 393; *Clark v. Jones*, 85 Ala. 127; Throop on Verb. Agreements, §§ 209–12. (2.) There was no evidence that the Wetumpka Lumber Company was a partnership; its name rather indicated that it was a corporation, and its business was conducted through a president and secretary. The *onus* was certainly not on the defendant to prove incorporation, or to negative partnership. The charges of the court, then, based on the existence of a supposed partnership, of which there was no evidence, were erroneous. *Wise v. Falkner*, 51 Ala. 359; *Boddie v. State*, 52 Ala. 395; *Lehman v. Warren*, 53 Ala. 535; *Henderson v. State*, 49 Ala. 20. (3.) Even if there was any evidence of a partnership, the defendant could not be charged as a partner in this action, which was against him individually. There would have been a fatal variance between the pleadings and the proof.

WATTS & SON, *contra*.—(1.) By statutory provision, partnership debts are made joint and several, and an action may be maintained by the creditor against the partnership as an entity, or against one or more parties individually and separately.—Code, § 2605; *Duramus v. Harrison*, 26 Ala. 326; *Hall v. Cook*, 69 Ala. 87; *Tarleton v. Herbert*, 4 Ala. 359; *McCulloch v. Judd, Sons & Co.*, 20 Ala. 703; *Emanuel v.*

[Clark v. Jones & Brother.]

*Bird*, 19 Ala. 596; *Waldron v. Simmons*, 28 Ala. 629; *Van Wagner v. Chapman*, 29 Ala. 172; *Haralson v. Campbell*, 63 Ala. 278. (2.) The name of the defendant's company, in this case, does not necessarily import a corporation, nor is a corporation to be presumed because its business was conducted by and through a president and secretary.—*Thomas Hurrow Co. v. Seymour*, 81 Ala. 250; 27 La. Ann. 607; 45 N. Y. 410; 55 Mo. 310; 7 Wend. 542. There was some evidence, also, that the company was not a corporation, namely, the defendant's own declaration as to its members, and the note afterwards given by the company, which contains a waiver of exemptions. (3.) The questions arising under the statute of frauds were properly submitted to the jury.—*Rhodes v. Leeds*, 3 Stew. & P. 212; *Boykin & McRae v. Dohlande & Co.*, 37 Ala. 577; *Bates v. Starr*, 6 Ala. 697; *Scott v. Myatts & Moore*, 24 Ala. 482; *Sanford v. Howard*, 29 Ala. 684; *Ledlow v. Becton*, 36 Ala. 596.

CLOPTON, J.—The instructions of the court based the liability of defendant for the price of the goods, to recover which appellees bring this action, on two hypotheses: *first*, as the real and sole purchaser; *second*, as a member of a partnership for whom the goods were bought. As to the first ground of liability, the contestation is, whether the promise of the defendant to pay for the goods comes within the provision of the statute of frauds relating to "every special promise to answer for the debt, default, or miscarriage of another." In solving this question, the main and decisive inquiry is, Was the promise original and absolute, or collateral and conditional? As the plaintiffs seek by the action to charge the defendant with the price of the goods delivered to the Wetumpka Lumber Company, the rule applicable, and which must govern, may be thus stated: If the goods were sold on the sole credit of the defendant, his promise is original, and without the statute; but, if any credit was given to the company, who received the goods, the promise is collateral, and within the statute. In the latter case, it is immaterial to which party the credit was principally given. *Boykin v. Dohlande*, 37 Ala. 577. To bring such promise within the operation of the statute, there must be concurrent liabilities, each of which is capable of being enforced.

The evidence on the part of the plaintiffs tends to show, that, on application being made by defendant to obtain goods for the company, they refused to sell on the company's credit,

[Clark v. Jones & Brother.]

but proposed to let the company have the goods on the defendant's credit, to which he agreed. On cross-examination of one of the plaintiffs, it was brought out that, at the time defendant applied to get the goods, they agreed, for all goods not paid for by the acceptance of McEachin, which defendant proposed to turn over to them, to take, at the expiration of thirty days, the company's acceptance, with defendant's indorsement. In his testimony, the defendant denies that he offered, directly or indirectly, to become responsible for the goods; but did not otherwise contradict the evidence on behalf of plaintiffs, as to what occurred at the time. There is an absence of evidence that the company made, at the time or previously, application to procure the goods, or assumed any liability therefor, other than the application and promise of defendant. Taking and considering all the words used, it is apparent that they are susceptible of two meanings: one importing a collateral undertaking to indorse the company's acceptance, to which the statute applies; the other an original and independent promise to pay for the goods, with an understanding or agreement that plaintiffs would take, at the expiration of thirty days, in lieu thereof, the company's acceptance with defendant's indorsement—a novation of the primary promise, which takes the statute out of the case. When the words employed are susceptible of two meanings, the question must necessarily be submitted to the jury to determine in which sense they were used and understood.—Throop Verb. Ag., § 180.

The mere fact that the goods were charged to the company on the books of plaintiffs, in the manner shown, is not conclusive that any credit was given to the company. The manner in which the account was entered on the books is consistent with the intention of the defendant to bind himself as the real purchaser, especially when it appears from the uncontradicted evidence that they were so charged by his request, and for his accommodation. The same observations apply to the subsequent taking of the unindorsed acceptance of the company, and its renewal by note. There is evidence tending to show that the acceptance and note were not taken as payment, and that defendant was informed at the time that plaintiffs would not release him from liability. Giving credit subsequently to the company did not, under the circumstances, operate to change the character of the original promise. These were facts and circumstances to be referred to the jury, to determine whether credit was given exclu-

sively to defendant.—*Sanford v. Howard*, 29 Ala. 684; *Ledlow v. Becton*, 36 Ala. 596. On the entire evidence, it can not be said, as matter of law, that any credit was given to the company, or that the company incurred any enforceable liability, at the time the goods were obtained and the promise of defendant was made.

The charges of the court, to the effect that, if the goods were sold at the request of the defendant, and on his credit, he is liable, and the statute of frauds would be no obstacle to a recovery, is in accord with the foregoing principles. If the hypothesis of the charge be true, the goods were sold on the sole credit of the defendant; that is, were really sold to him.—*Boykin v. Dohlande, supra*. The charges properly submit to the jury the determination of the facts supposed, on consideration of the entire evidence. If the defendant apprehended that the jury might be misled by the generality of the terms of the instruction, he should have asked qualifying charges, based on the hypothesis in his favor which the evidence tends to establish.

In relation to the second ground of liability, the court instructed the jury, if the goods were sold to a firm of which the defendant was a member, he was liable in this action. The first objection urged to this charge is, that there is no evidence on which to predicate an inference that the Wetumpka Lumber Company is a partnership. It may be conceded, that, as the name may fairly import either a corporation, an unincorporated association, or a partnership, no presumption arises from the *mere name* that the company is either the one or the other. It may, be further conceded, that, as plaintiffs declare against defendant individually, and yet seek to charge him as a partner, it is incumbent on them, in the first instance, to show a partnership; but, when they have introduced evidence which *prima facie* establishes a partnership, or from which it may be reasonably inferred, the burden is cast on the defendant to show incorporation, when he seeks to avoid individual liability on the ground that the company is a corporation. At the time the defendant proposed to purchase the goods, he represented that the company was composed of himself, his son and another, and that it was solvent, without any assertion or intimation that it was a corporation. This representation *prima facie* imports a voluntary association of three persons, combining their capital, labor and skill in the business, which was carried on for their common benefit. The fact that the company

had a president and secretary is not conclusive of corporate character. The material respects, in which unincorporated associations differ from a partnership, are, that the former are generally composed of a larger number of persons than the latter, and the business is usually conducted by officers acting for all the members. No presumption of incorporation arises from the fact that the business of the company was transacted by a president and secretary. There was sufficient evidence, whether weak or strong is immaterial, in the absence of any other evidence of incorporation, on which to predicate the charge.

It is further objected, that proof of a demand against a partnership, of which defendant is a member, does not authorize a recovery on a complaint which counts on an account stated between plaintiffs and defendant individually, and for goods sold to him alone. This question should be regarded as *res adjudicata* in this State. Under the statute, which declares, "any one of the associates, or his legal representative, may also be sued for the obligation of all," it has been uniformly held, that a partnership creditor may sue one of the members of the firm, for a debt contracted in the partnership name, whether by account or otherwise, and declare upon the demand as his individual liability.—Code, 1886, § 2605; *Duramus v. Harrison*, 26 Ala. 326; *Hall v. Cook*, 69 Ala. 87; *McCulloch v. Judd*, 20 Ala. 703.

Affirmed.