(102 So. 210)

### J. ZIMMERN'S CO. v. GRANADE.
### (1 Div. 299.)

(Supreme Court of Alabama. Nov. 20, 1924.)

1. **Contracts ⬅176(6)—Construction of unambiguous correspondence constituting contract held question for court.**

Where contract consisted of unambiguous correspondence, its construction and legal effect was question for court.

2. **Guaranty ⬅4—Contract held direct and original, and not collateral, promise to pay for merchandise shipped another.**

Contract made up of correspondence withdrawing credit from corporation, and offering to extend it to defendant personally, and his acceptance, held original and direct, and not collateral, promise of defendant to pay for merchandise shipped to corporation.

3. **Guaranty ⬅27 — Principle that contract taken "contra proferentem" held applicable to contract to be responsible for account of corporation.**

Principle that contract is to be taken "contra proferentem," that is, construed most strongly against him entering into obligation, held applicable to contract by defendant to personally be responsible for account of corporation.

4. **Guaranty ⬅4—Agreement to be responsible held not affected by fact that merchandise bought was delivered direct to corporation.**

Direct and original contract to be personally responsible for goods shipped is not changed by fact that merchandise bargained for was to be, and was, delivered direct to a corporation.

5. **Guaranty ⬅4—Contract to be responsible held not affected by fact that merchandise was charged directly to corporation on seller's books.**

Direct original agreement to be responsible for goods bought held not affected by fact that merchandise was charged on seller's books against corporation.

6. **Guaranty ⬅36(5)—Agreement to be responsible held to apply to goods shipped to different place than first specified.**

Where defendant agreed to be personally responsible for goods shipped to corporation and directed that shipments be made to C., but later gave order for shipment to different place, agreement held to cover goods shipped to that point.

Appeal from Circuit Court, Washington County; Ben D. Turner, Judge.

Action in assumpsit by J. Zimmern's Company against James N. Granade. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Smiths, Young, Leigh & Johnston, of Mobile, for appellant.

There was a direct undertaking on the part of defendant, by the letter of March 10, 1916, to pay plaintiff for all future shipments; it was continuing in nature and binding until revoked. Scott v. Myatt, 24 Ala. 489, 60 Am. Dec. 485; Bates v. Starr, 6 Ala. 697; Oliver v. Hire & Le Baron, 14 Ala. 590; Jolley v. Walkers' Adm'rs, 26 Ala. 690; Cameron v. Haas Bros. P. Co., 3 Ala. App. 520, 57 So. 388; Smith Bros. & Co. v. Miller, 152 Ala. 485, 44 So. 399; Clark v. Jones & Bros., 87 Ala. 474, 6 So. 362; Walker v. Forbes, 25 Ala. 139, 60 Am. Dec. 498; Taussig v. Reid, 145 Ill. 488, 30 N. E. 1032, 32 N. E. 918, 36 Am. St. Rep. 504; Wright v. Griffith, 121 Ind. 478, 23 N. E. 281, 6 L. R. A. 639; Lowe v. Beckwith, 14 B. Mon. (Ky.) 184, 58 Am. Dec. 659; Newcombe v. Kloeblen, 77 N. J. Law, 791, 74 A. 511, 39 L. R. A. (N. S.) 724; Boykin & McRae v. Dohlonde, 37 Ala. 583. Plaintiff was entitled to the affirmative charge. Birmingham News Co. v. Read, 200 Ala. 655, 77 So. 29; Phillip Boyd Pub. Co. v. McKinnon, 197 Ala. 443, 73 So. 43; Shows v. Steiner, Lobman & Frank, 175 Ala. 363, 57 So. 700; Davis v. Wells, 104 U. S. 159, 26 L. Ed. 686; Am. W. Co. v. Moskowitz, 159 App. Div. 573, 144 N. Y. S. 532; Drummond v. Prestman, 12 Wheat. 515, 6 L. Ed. 712; Smeltzer v. White, 92 U. S. 390, 23 L. Ed. 508; Livingston v. Arrington, 28 Ala. 424; Minge v. Green, 176 Ala. 343, 58 So. 381; Evans v. Sanders, 8 Port. 497, 33 Am. Dec. 297; Seay v. McCormick, 68 Ala. 549; Ashley v. Cathcart, 159 Ala. 474, 49 So. 75; Lively v. Robbins, 39 Ala. 461; Comer v. Bankhead, 70 Ala. 136; Loeb v. Montgomery, 7 Ala. App. 325, 61 So. 642; Hunter v. McCraw, 32 Ala. 518; Cahuzac v. Samini, 29 Ala. 288. It was the duty of the court to construe the contract. Holman v. Crane, 16 Ala. 570; Kidd v. Cromwell, 17 Ala. 648; Bernstein v. Hume, 60 Ala. 582; Boykin v. Bank, 72 Ala. 262; Barnhill v. Howard, 104

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Ala. 412, 16 So. 1; Davis v. Badders, 95 Ala. 348, 10 So. 422; Hardaway Wright v. Bradley Bros., 163 Ala. 596, 51 So. 21.

Granade & Granade, of Chatom, and Steiner, Crum & Weil, of Montgomery, for appellee.

The letters do not show a meeting of the minds of the parties; there was no contract until the terms were mutually agreed upon. 28 C. J. 898; Manier v. Appling, 112 Ala. 663, 20 So. 978; Phillips-Boyd Pub. Co. v. McKinnon, 197 Ala. 443, 73 So. 43. A contract of guaranty must be strictly construed according to its undertaking; plaintiff was not entitled to recover for shipments made to Mississippi. Manatee Bank v. Weatherly, 144 Ala. 655, 39 So. 988; 28 C. J. 957; Bradshaw v. Barber, 125 Minn. 479, 147 N. W. 650.

SAYRE, J. Plaintiff (appellant), a partnership, brought this suit against defendant stating its cause of action in two counts: (1) The common count for money due by account. (2) Special assumpsit based on correspondence between the parties as follows: "On March 6, 1916," it is alleged, "the plaintiffs wrote to defendant and stated that they did not care to make sales to the Chatom Mill Company, unless the defendant would personally guarantee the account; that in reply to said letter said James N. Granade wrote to plaintiffs stating that he would be personally responsible for the accounts of the concern to plaintiffs." A copy of the letter last referred to, and exhibited with the count as a part thereof, was as follows:

"March 10, 1916.

"J. Zimmern's Company, Mobile, Alabama—

Gentlemen: Your letter of the 6th instant is received, and, of course, if you will not ship the Chatom Mill Company, then the writer will stand personally responsible for the accounts of the concern to you, as it is not our custom to dodge behind any legal fictions. We will expect shipment of our next bill on the 10th instant, which will be as follows, to wit: 30 sacks cracked corn, 5 sacks bran. All shipments to go to the Chatom Mill Company, Chatom, Alabama, and no further shipments to be made to Loper, Alabama, shipments to come forward on the first, tenth and twentieth of each month.

"Very truly yours,

"James N. Granade, President."

The letter of March 6, 1916, was placed in evidence and appeared in the following language:

"Mobile, Ala., March 6, 1916.

"Mr. James N. Granade, Chatom, Alabama—Dear Sir: We herewith inclose your invoices for all orders on hand. We have made the shipments so as not to inconvenience you until we can get matters satisfactorily arranged. Now referring to your letter of the 3d regarding your guaranteeing the account of the Chatom Mill Company over and above $250.00, will state we find the Chatom Mill Company is an incorporated concern with authorized capital of $5,000.00, and with only $1,000.00 paid in. This is the report which we have, therefore, we do not care to make sales to a small corporation unless you would personally guarantee the account. Made out in one form. These are the only terms on which we can handle the account, unless subject to sight draft with bill of lading attached. We will give you a personal line of credit of $500.00, but we do not care to give a line of credit to an incorporated concern.

"Awaiting your reply, we are

"Yours very truly,    J. Zimmern's Co.

"Dic. LZ.

"Inclosures."

There was a second count, but no question arises on it, and it has been omitted.

[1] This correspondence evidenced the contract between the parties, it is unambiguous, and its construction and legal effect was a question of law for the court's determination. Holman v. Crane, 16 Ala. 580; Kidd v. Cromwell, 17 Ala. 652; Scott v. Myatt, 24 Ala. 489, 60 Am. Dec. 485; Boykin v. Bank of Mobile, 72 Ala. 262, 47 Am. Rep. 408; Davis v. Badders, 95 Ala. 348, 10 So. 422.

[2, 3] The contract thus evidenced and construed was an original, direct, and not collateral, promise on the part of defendant to pay for merchandise thereafter to be shipped by plaintiff to the Chatom Mill Company. Plaintiff's letter of March 6th shows a withdrawal of credit from the Chatom Mill Company and an offer of credit to defendant, by him accepted. Bates v. Starr, 6 Ala. 697; Oliver v. Hire, 14 Ala. 590; Scott v. Myatt, 24 Ala. 489, 60 Am. Dec. 485; Jolley v. Walker, 26 Ala. 690; Sanford v. Howard, 29 Ala. 684, 68 Am. Dec. 101; Marx v. Bell, 48 Ala. 497; Hobbs v. State, 75 Ala. 6. In this connection, recourse might also be had to the principle that all instruments are to be taken "contra proferentem"—against him who gives, or undertakes, or enters into an obligation. Seay v. McCormick, 68 Ala. 550; Comer v. Bankhead, 70 Ala. 136; Ashley v. Cathcart, 159 Ala. 474, 49 So. 75.

[4] Such being the effect of the contract, its nature was, of course, not changed by the fact that the merchandise bargained for was to be delivered, and was delivered, to the Chatom Mill Company. Pake v. Wilson, 127 Ala. 242, 28 So. 665; Smith v. Miller, 152 Ala. 488, 44 So. 399.

[5] Nor, in the presence of these writings, does the fact that the merchandise was charged on plaintiff's books against the Chatom Mill Company, as the evidence showed, change the legal effect of the contract in writing between the parties. Scott v. Myatt, and Sanford v. Howard, supra. In Clark v. Jones, 87 Ala. 480, 6 So. 363, it was said:

"The mere fact that the goods were charged to the company [defendant's corporation] on the books of plaintiffs, in the manner shown, is not conclusive that any credit was given to the company."

But in that case the contract rested in parol and the testimony as to its terms was in conflict. And in that case a recovery on the common counts was allowed, and as to the propriety of this there can be no doubt.

The evidence went to show that goods were shipped and delivered by plaintiff to the Chatom Mill Company under the terms of the agreement set forth in the correspondence, supra, and that they had not been paid for. It was error, as we have stated in effect, for the court to leave the construction of the contract with the jury, as it did in its oral charge, and likewise error to charge the jury that there could be no recovery under count 1, the common count, thereby assuming that defendant's contract was a collateral guaranty. Walker v. Forbes, 25 Ala. 139, 60 Am. Dec. 498.

[6] Defendant's engagement, shown by his letter of March 10th, was continuing in its character. That much we think is clear, and under that contract, evidently, plaintiff continued for some time to ship goods to the Chatom Mill Company at Chatom. But after a while the company's plant at Chatom was burned, and thereafter it began business at Winchester, Miss. Goods of the same character as before were shipped to that point, and payments made from time to time, so that, when subsequently the company was adjudicated a bankrupt, the only goods remaining unpaid for were goods that had been delivered at Winchester. Now the question is whether on the evidence plaintiff was entitled to have the jury instructed that such goods were furnished on the personal credit of defendant, or whether that was a question for the jury.

The controlling facts are undisputed. Whatever doubt there may be on the issue stated arises out of the fact that in defendant's letter of March 10th he directed that "all shipments to go to the Chatom Mill Company, Chatom, Ala., and no further shipments to be made to Loper, Ala.," whereas the goods for which compensation is sought were shipped to Winchester. When the letters constituting the contract between the parties were written, the company, as the record shows without dispute, had just ceased to do business at Loper and was starting up its mill at Chatom. In a short time—30 to 60 days—the mill at Chatom burned; but defendant, or his corporation, the mill company, in which defendant owned all but three or four shares of stock, had cattle at Chatom and orders for feedstuff continued to go forward from that point to plaintiff until the summer of 1917. All transactions between the parties involved feedstuff. These orders, until December, 1916—about a dozen of them were put in evidence—were signed "James N. Granade, President." After that they were signed "Chatom Mill Company, James N. Granade, President." The record shows numerous orders dated down to the middle of June, 1917, signed as last stated. The following letter was in evidence:

"James N. Granade.            Joe C. Granade.
                Granade & Granade.
            "Attorneys and Counselors.
                "Chatom, Ala., July 29, 1918.
    "J. Zimmern's Co., Mobile, Alabama—Gentlemen: Inclosed herewith you will find check for $200.00, balancing our account to day. Kindly do not use this check till August 5, for which date it is drawn. We are arranging to operate a little mill at Winchester, Mississippi; and, if you wish, ship us the following order to Winchester, Mississippi:
    "40 sacks best crack corn.
    "20 sacks wheat brand.
    "20 sacks ox feed.
    "2 sacks Mule feed.
    "We are quoted a price of $2.25 for ox feed, and will thank you if you will give us your best price on the feed. Acknowledge receipt to Winchester, Mississippi. Try to give the bran, but if you cannot, send shorts.
                "Chatom Mill Company,
                "James N. Granade, President.
    "Also ship to James N. Granade, Chatom, Ala., bill to Chatom:
    "2 sx white clip oats,
    "2 sx wheat shorts,
    "2 sx V. Best meal.
    "Granade."

A number of orders followed from Winchester, some of them signed "James N. Granade, President," others, "Chatom Mill Company, James N. Granade, President." Some of these were signed by one Stewart, the company's secretary and manager at Winchester, whose authority was not questioned.

We have said that the contract witnessed by the letters of March 6 and 10, 1916, was a continuing contract. This much appears upon the face of the papers. Plaintiff continued to deliver, and defendant to accept, goods under this contract down to the time of the removal of the Chatom Mill Company business to Winchester with nothing to indicate a change in the contractual relations of the parties. Then defendant, inclosing a check to balance the account to date, wrote:

"We are arranging to operate a little mill at Winchester, Mississippi; and, if you wish, ship us the following order to Winchester, Mississippi."

In Cahuzac v. Samini, 29 Ala. 288, the court said:

"But we hold, that, when an offer of a continuing guaranty, unlimited in amount, has been accepted, and notice of its acceptance given in a reasonable time"—as to which there is no difficulty in this case—"it then becomes the duty of the guarantor to guard his interest, and to see that his confidence is not abused."

That was the case of a technical guaranty, true, but the case here points even more

conclusively to liability, for, accepting the fact that defendant and his corporation were distinct legal entities, the circumstances, shown without conflict in the evidence, should have inculcated more persuasively defendant's duty, if he would stop the shipment of goods on his personal credit, to notify plaintiff of his changed intention. In agreement with this view the court in a case like this, Scott v. Myatt, supra, though the language of the written order there under consideration was not so clear to the conclusion of continuity of contract and liability as that shown here, said:

"We must, for these reasons, hold the order as continuing, until the account was closed, or the order revoked by the appellant," defendant in that case.

In the present case defendant can point only to the circumstance that the business of the mill company was moved from Chatom to Winchester, for his testimony was that he never did, by letter or personal conversation, tell Zimmern that he would no longer be personally responsible for goods shipped to the Chatom Company. On the contrary, in his letter of July 18, 1918, paying the Chatom Mill account up to date, he wrote, as we have before stated, inviting further shipments to the mill at Winchester. This neither closed the account, which had come over without break from 1916, nor gave notice that it would be continued on different terms. On the contrary, it seemed to invite a further continuation of the existing arrangement save only in respect of the shipping point; whereas, if other or further change was desired, the burden of so informing plaintiff rested upon defendant. In our judgment the dubious phrase, "if you wish," however intended, was wholly inadequate for the purpose of changing the relations between the parties.

Plea 14 proceeded upon the theory that defendant was not legally bound by his contract to pay for goods shipped to the Chatom Mill Company at Winchester. We believe enough has been said to show the fallacy of this theory and assumption, and that the demurrer to this plea should have been sustained.

For like reason the questions propounded to witnesses over plaintiff's objection, and now assigned for error, asked for immaterial matter.

It will be found that in several rulings in the matter of instructions to the jury the trial court did not observe the principles of law which, in our opinion, were of controlling effect in the case.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.